(No. 30843.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HERMAN E. REDLICH, Plaintiff in Error.

*Opinion filed January 19, 1949.*

Francis T. McCurrie, (John M. Branion, Cornelius J. Collins, and Frank J. Ferlich, of counsel,) all of Chicago, for plaintiff in error.

George F. Barrett, Attorney General, of Springfield, and William J. Tuohy, State's Attorney, of Chicago, (John T. Gallagher, Melvin S. Rembe, W. S. Miroslawski, and Arthur F. Manning, all of Chicago, of counsel,) for the People.

Mr. Justice Thompson delivered the opinion of the court:

Plaintiff in error, Herman E. Redlich, hereinafter referred to as the defendant, was indicted in the criminal court of Cook County for the crime against nature. After the indictment had been returned a petition was filed in

that court by the State's Attorney alleging that the defendant, although not insane or feebleminded, was suffering from a mental disorder which had existed for more than one year prior to the filing of the petition; that the defendant had criminal propensities to the commission of sex offenses, and was a criminal sexual psychopathic person. The prayer of the petition was that two qualified psychiatrists be appointed to examine the defendant and file their report, together with their conclusions and recommendations as provided by an act entitled "An Act to provide for the commitment and detention of criminal sexual psychopathic persons," approved July 6, 1938. Ill. Rev. Stat. 1947, chap. 38, pars. 820 to 825, incl.

Defendant filed a motion to strike the petition and as grounds of the motion alleged in general terms the unconstitutionality of the statute. The motion was overruled and after defendant had filed an answer denying that he was suffering from any mental disorder or that he was a criminal sexual psychopathic person, the court appointed two psychiatrists as requested in the petition. Thereafter, defendant having refused to submit to such examination, the court, on written motion of the State's Attorney, entered an order directing defendant to submit *instanter* to a personal examination by the psychiatrists and to answer their questions. Defendant and counsel representing him were present in court when the order was entered. Defendant objected to the order and stated to the court that he refused to obey the same on the ground that his answers to the questions of the psychiatrists could be used as evidence against him and involve his constitutional rights. The State's Attorney then presented and filed a written motion asking for a rule on defendant to show cause *instanter* why he should not be held in contempt of court for refusing to obey said order. Defendant was questioned further by the court and by his own attorney. He was served with a copy of the order directing him to submit to a personal examination

by the two psychiatrists. He stated that he understood the order and understood the court might punish him for contempt, but refused to submit to such examination or to answer questions propounded to him by the two psychiatrists, claiming a constitutional privilege to refuse to do so. The court then entered an order which recited the entire proceedings, found defendant guilty in open court of a direct contempt of the court, and sentenced him to confinement in the county jail of Cook County until he complied with the order of the court by submitting to a personal examination by the psychiatrists and answering their questions, or until he was discharged according to law.

Defendant was afterward tried upon the indictment, found guilty and sentenced to the penitentiary. He has now sued out this writ of error to reverse the judgment finding him guilty of contempt and sentencing him to the county jail. He brings the cause directly to this court as one of his assignments of error questions the constitutionality of section 4 of the act entitled "An Act to provide for the commitment and detention of criminal sexual psychopathic persons."

The errors assigned and argued are: (1) To compel defendant to submit to a personal examination by two psychiatrists and answer questions propounded to him by them would be a violation of his constitutional rights not to be compelled to give evidence against himself in a criminal case, and that to enforce the judgment of contempt would be a violation of his constitutional right to have all penalties proportioned to the nature of his offense; (2) that by operation of law the order adjudging him guilty of contempt became null and void when he was thereafter tried, found guilty of the crime for which he was indicted and sentenced to the penitentiary; (3) that the order adjudging him guilty of contempt and sentencing him to the county jail is legally insufficient; and, (4) that the motion for a rule upon him to show cause is also legally insufficient.

The court order for violation of which defendant was adjudged guilty of contempt was based upon the statute above mentioned, which provided for the commitment and detention of criminal sexual psychopathic persons. This statute was passed by the legislature in 1938 and contained six sections. Section 1 states the definition of criminal sexual psychopathic persons. Section 2 enumerates the courts given jurisdiction under the act. Section 3 provides that when any person is charged with a criminal offense and it shall appear to the Attorney General or State's Attorney of the county wherein such person is so charged that such person is a criminal sexual psychopathic person, then the Attorney General or State's Attorney of such county may file with the clerk of the court in the same proceedings wherein such person stands charged with a criminal offense, a petition in writing setting forth facts tending to show that the person named is a criminal sexual psychopathic person. Section 4 authorizes the court to appoint two psychiatrists to make a personal examination of the accused and file their report as to his condition together with their recommendation. Section 5 provides that before a trial on a criminal offense a hearing on the petition shall be held before a jury to ascertain whether or not the person charged is a criminal sexual psychopathic person, and that if the jury by their verdict determine that he is a criminal sexual psychopathic person, then the court shall commit him to the Department of Public Safety, and the Department of Public Safety shall safely keep him until he shall have fully and permanently recovered from such psychopathy. Section 6 provides that, after commitment, an application in writing setting forth that such person has recovered may be filed before the committing court and a jury shall be impanelled to ascertain whether or not he has fully recovered from such psychopathy. Upon a verdict of the jury that he has fully recovered, then the court shall order that he be discharged from the custody of the Department of Public

Safety and committed to the custody of the sheriff of the county from which he was committed, to stand trial for the criminal offense charged against him. This section also provides that upon a verdict of the jury that he has not recovered, then the court shall order him to be returned to the custody of the Department of Public Safety to be held under the previous commitment.

The foregoing statute was the subject of consideration by this court in *People* v. *Sims,* 382 Ill. 472, where the act was held valid. It was there unsuccessfully contended that the act was invalid in discriminating between criminal sexual psychopathic persons who are charged with crime and those who are not so charged and in permitting evidence of the commission of other crimes to be introduced upon hearing. This court in the *Sims case* pointed out that the proceeding provided for by the act is not a criminal proceeding and that the statute is in its operation not unlike the statutes providing for an inquiry into the sanity of one charged with crime before trial on the indictment.

These last-mentioned statutes providing for an inquiry into the sanity of one charged with crime before trial on the indictment are found in sections 12 and 13 of division II of the Criminal Code. (Ill. Rev. Stat. 1947, chap. 38, pars. 592 and 593.) The rule at common law was that an insane person or an idiot could not be required to plead to an indictment or be placed upon his trial for the crime charged. (4 Blackstone, 24.) Our legislature by enacting the provisions of sections 12 and 13 has declared its intention not to abrogate the common law in this respect, and by the enactment of the statute with which we are here concerned (Ill. Rev. Stat. 1947, chap. 38, pars. 820 to 825, incl.) has enlarged the scope of the common law so as to include any person charged with a criminal offense who, although not insane or feebleminded, is suffering from a mental disorder of the character described in the statute. Sections 12 and 13 have provided a method for determining whether a person

against whom criminal proceedings are pending is insane or feebleminded; and the said act of 1938 has provided a similar method for determining whether an accused who is not insane or feeble-minded is suffering with the mental disorder defined by the act. The trial of the question of his insanity, feeblemindedness, or psychopathy, as defined by statute, is no part of the criminal proceedings, has no connection with his guilt or innocence, and is not in aid of a determination of that question, but the sole object of the proceeding is to ascertain the mental condition of the accused, whether or not insane, feebleminded or psychopathic, as defined by statute, so as to determine if he should be required to plead to the indictment and be placed upon trial for the offense charged. Ill. Rev. Stat. 1947, chap. 38, pars. 592, 593, and 820 to 825, incl.; *People* v. *Reck,* 392 Ill. 311; *People* v. *Sims,* 382 Ill. 472.

A proceeding to determine whether a person charged with a criminal offense is a criminal sexual psychopathic person is a proceeding preliminary to his trial upon the indictment. The object of the legislature in providing for the proceeding, as clearly appears from the statute in question, was to prevent a person afflicted with such mental disorder from being tried for a criminal offense until he had recovered from such psychopathy. Hence, when there has been a trial of the criminal offense and the defendant has been convicted and sentenced without his mental condition having been previously determined in accordance with the provisions of the act, the object of the statute is destroyed as applied to that defendant and any proceeding pending under the statute for a determination of his mental condition, including all orders entered in said proceedings, would necessarily become null and void. A determination of his mental condition in said proceeding could serve no purpose and have no legal effect after his trial and conviction. His trial for the criminal offense cannot be stayed if it has already taken place. Therefore, when the defendant in the

instant case was tried, convicted and sentenced to the penitentiary, it followed as a logical consequence that the order of the court theretofore entered requiring him to submit to a personal examination was no longer of any force or effect. This being so, the question is then presented as to the effect upon the contempt order of the subsequent annulment and invalidity of the original order on which such contempt order was based.

Contempts have been classified as civil and criminal contempts. Contempt orders in the two classes of cases are of different kinds and made to different ends. Criminal contempts include acts in disrespect of the court or its process and those tending to bring the court into disrepute or obstruct the administration of justice, while civil contempts consist in failing to do something which the contemner is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court. (*Porter* v. *Alexenburg,* 396 Ill. 57; *Wilson* v. *Prochnow,* 359 Ill. 148.) Imprisonment imposed for a criminal contempt is purely punitive and must be for a definite term. (*Rothchild & Co.* v. *Steger & Sons Piano Mfg. Co.* 256 Ill. 196.) But in cases of civil contempt, the sentence being imposed as a remedial or coersive measure, the appropriate punishment is to commit the contumacious party to imprisonment until he has complied with the mandate of the court, since a fine or imprisonment for a specified term might not secure obedience to the order. (*Denison Cotton Mill Co.* v. *Schermerhorn,* 257 Ill. 128.) In civil contempt proceedings the order entered serves two purposes. In addition to vindicating the authority and dignity of the court, it also advances the relief granted to a party to the litigation. (*People ex rel. Brundage* v. *Peters,* 305 Ill. 223.) Quoting from *People* v. *Elbert,* 287 Ill. 458, in the above-cited case, this court, in discussing the different kinds of contempts and the punishment therefor, said, "The dividing line between the acts constituting criminal and those constituting civil

contempts becomes indistinct in those cases where the two gradually merge into each other. In those cases contempts have been classified and punished by the courts in some jurisdictions as criminal contempts and in others as civil contempts. Some courts adhere to the rule defining them as civil or criminal contempts according to the character of the suit in which they occur, designating them as civil contempts if the original suit is a civil suit and as criminal contempts if they arise in an original suit criminal in form. In most cases where they thus rest on the boundary line they are both civil and criminal contempts, and so far as the rights of the contemners are concerned may be punished as either."

The contempt order here involved was entered in a civil suit, (*People* v. *Sims,* 382 Ill. 472,) for the purpose of securing obedience to a previous order of the court directing him to submit to a personal examination by two psychiatrists; and this previous order being the original order on which the contempt order was based has, since the contempt order was entered, as we have hereinabove pointed out, been deprived of its force and vitality and in effect has, for all legal and practical purposes, been vacated and set aside.

The contempt order in the present case is for a civil contempt, only. The sentence of imprisonment imposed is a coercive measure to secure defendant's obedience to the order that he submit to an examination by the psychiatrists, and the term of such imprisonment is limited by the period of his noncompliance with said order. But, if defendant should now submit to such examination, no possible benefit could result therefrom. The court ordering the examination has lost all jurisdiction. It no longer has any concern with the mental condition of the defendant, because that issue has now become moot. A question is said to be moot when it presents or involves no actual controversy, interests or rights of the parties, or where the

issues have ceased to exist. (*Chicago City Bank and Trust Co.* v. *Board of Education*, 386 Ill. 508.) The general rule is that when a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved or where the substantial questions involved in the trial court no longer exist, it will dismiss the appeal or writ of error. *Tuttle* v. *Gunderson*, 341 Ill. 36.

This case, however, is one in which the appeal should not be dismissed because that would leave the contempt order to be enforced and leave defendant committed to jail until he complies with an order which no longer exists.

In accordance with our views hereinabove expressed, the order committing the defendant to jail for contempt is reversed.

*Order reversed.*