CONTINENTAL ILLINOIS NATIONAL BANK, Plaintiff-Appellee, *v.* HELEN VORHEES BRACH *et al.*, Defendants-Appellees.—(JOHN H. CONWAY, Appellant.)

First District (5th Division)    No. 78-731

Opinion filed May 4, 1979.

Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Joseph B. Lederleitner and Robert Mark Chemers, of counsel), for appellant.

John Cadwalader Menk and Arthur M. Gorov, both of Chicago, for the Hon. George J. Schaller.

Howard H. Braverman and Clive M. Topol, both of Springfield, for *amicus curiae* Illinois State Bar Association.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

John H. Conway appeals from a finding of contempt of court arising out of his refusal to comply with a discovery order. On appeal, he contends that the trial court erred (1) in determining (a) that a document protected by the attorney-client privilege was discoverable and (b) that such document was relevant to the issues involved in the underlying litigation; (2) by accepting a waiver of the attorney-client privilege by the guardian ad litem of the missing client; and (3) by entering a contempt decree which was not in accordance with applicable law.

Helen Vorhees Brach disappeared on or about February 21, 1977. Thereafter, on May 25, 1977, the probate division of the Circuit Court of Cook County granted the petition of Charles Vorhees, her brother, to appoint Everett H. Moore as administrator to collect Helen's estate (Moore). (Ill. Rev. Stat. 1977, ch. 110½, par. 10—3.) One aspect of such estate was her interest as sole income beneficiary of a trust created by the will of her late husband, under which she and the Continental Illinois National Bank (Bank) were trustees. The trust provided for, among other things, the mandatory distribution of trust income to Helen. On June 1, 1977, the Bank received dividend income on the trust corpus in the amount of $75,620 and, upon Moore's petition, a citation to recover assets was issued against the Bank—which refused to pay the income to Moore.

On July 14, 1977, in the chancery division of the Circuit Court of Cook County, the Bank brought an action against Helen, individually and as trustee, for the construction of the terms of her late husband's will. Among other things, the Bank sought determinations as to whether it became sole trustee because of Helen's disappearance and whether trust income could be expended to defray the expenses of a search to ascertain her whereabouts. During the course of this litigation, two representatives were granted leave to defend Helen's interests—on August 25, 1977, the probate division granted Moore's petition for such authority (Ill. Rev. Stat. 1977, ch. 110½, par. 10—4) and Moore then retained Conway as counsel to represent Helen's interests; and on November 4, 1977, the chancery division, upon the Bank's petition for the appointment of a guardian ad litem for Helen, appointed John Cadwalader Menk to so act.

Subsequently, the probate proceedings to collect the assets of Helen's estate and the chancery proceedings to construe the terms of her

late husband's will in light of her disappearance were consolidated. It then came to Menk's attention that the law firm with which Conway was associated had possession of a document purporting to be Helen's last will and testament. When Menk moved for production of such document, Conway interposed two objections to its discovery; namely, that Helen was presumed to be alive and therefore any document purporting to be testamentary in nature was of no legal significance and was irrelevant to the matters at issue in the consolidated litigation; and that such document was drawn at Helen's direction by members of his law firm, and thus was protected from disclosure by the attorney-client privilege of confidentiality until such time as Helen herself waives the privilege. After considering the written briefs and oral argument of all parties concerned, the trial court found that the document was relevant to the issues raised in the underlying litigation; that any attorney-client privilege which may have shielded the document from discovery was expressly waived by her guardian ad litem; and that Conway's refusal to produce such document in accordance with its order constituted direct civil contempt. Based upon such findings, Conway was adjudged guilty of contempt and was ordered to pay a fine of $100 and serve 10 days in the Cook County Jail. However, upon Conway's representation that he intended to take an immediate appeal, enforcement of the order was stayed pending the disposition of the appeal.

After filing his notice of appeal, Conway learned that prior to her disappearance Helen had left the testamentary document in Moore's possession for an unspecified period of time. Considering this to be a waiver of the attorney-client privilege, Conway produced the document.

OPINION

Initially, Conway contends that the production order was erroneous in that the document to be produced was protected by the confidentiality of the attorney-client privilege and was not discoverable due to its irrelevance to the matters at issue in the underlying litigation.

■■ Our first concern is whether the questions of privilege and discoverability have been mooted by the production of the document. In this regard, it is well settled that:

> "[A] moot question is one that existed, but, because of the happening of certain events, has ceased to exist and no longer presents an actual controversy over interest [sic] or rights of the parties. An abstract question is one in existence, but for which no effectual relief can be granted.
>
> * * * 'The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be

carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " *Harney v. Cahill* (1965), 57 Ill. App. 2d 1, 9-10, 206 N.E.2d 500, 505.

■ In the instant matter, we find and the parties agree that when Conway produced the testamentary document, all questions relating to its discoverability were rendered moot. Nevertheless, this appeal cannot properly be dismissed, as that would leave the contempt order with its attendant fine and prison sentence to be enforced. *People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736.

In this regard, Conway contends that regardless of the propriety of the production order, the trial court abused its discretion by entering the contempt decree, as it was not in accordance with applicable law. We agree.

■ In *Eden v. Eden* (1975), 34 Ill. App. 3d 382, 388, 340 N.E.2d 141, 146, it was noted that:

> "Contempt of court generally consists of any act which is calculated to obstruct, embarass or hinder the court in the administration of justice and which is committed for the purpose of lessening the authority or the dignity of the court. (*E.g., People v. Miller*, 51 Ill. 2d 76, 78, 281 N.E.2d 292, 293; *In re Estate of Melody*, 42 Ill. 2d 451, 452, 248 N.E.2d 104, 105.) Moreover, there are four types of contempt which are delineated as follows: (1) indirect contempt which entails a contumacious act committed outside the presence of the court (*e.g., People v. Javaras*, 51 Ill. 2d 296, 300, 281 N.E.2d 670, 672; *Kay v. Kay*, 22 Ill. App. 3d 530, 318 N.E.2d 9 (abstract opinion)); (2) direct contempt which involves an act committed in the presence of the court (*e.g., People v. Clark*, 4 Ill. App. 3d 301, 303, 280 N.E.2d 723, 724; *Kotowski v. Kotowski*, 3 Ill. App. 3d 231, 233, 278 N.E.2d 856, 857); (3) civil contempt which consists of failing to do something ordered by the court, usually for the benefit of the opposing litigant (*e.g., People ex rel. Kazubowski v. Ray*, 48 Ill. 2d 413, 416, 272 N.E.2d 225, 226, *cert. denied*, 404 U.S. 818, 30 L. Ed. 2d 118, 92 S. Ct. 78; *Sullivan v. Sullivan*, 16 Ill. App. 3d 549, 551-52, 306 N.E.2d 604, 605); and (4) criminal contempt which comprises conduct directed against the dignity and authority of the court or the judge acting judicially (*e.g., Sullivan v. Sullivan*, * * *; *George v. Toal*, 6 Ill. App. 3d 329, 286 N.E.2d 41 (abstract opinion))."

The essence of a civil contempt is that when the trial court's command is disobeyed, the loss of benefit or advantage falls upon the adversary, and the dignity of the court is only incidentally involved. (*Sullivan v. Sullivan*.) A civil contempt decree must provide defendant with the keys

to his cell, enabling him through compliance with the terms of the command to purge himself of contempt. *Redlich; Welding Industrial Supply Co. v. Northtown Industries, Inc.* (1978), 58 Ill. App. 3d 625, 374 N.E.2d 1002.

▮ During the course of oral argument before this court, the parties agreed that the contempt decree was civil in nature and that it was improper to the extent it fixed a definite punishment without giving Conway the opportunity to purge himself of the contempt. Ordinarily, such circumstances would require our reversal of the contempt order and remandment of the cause with directions to the trial court to enter an order which provides Conway with an opportunity to purge himself of contempt by compliance within a time certain—in default of which the contempt order would stand. (*Monier v. Chamberlain* (1966), 66 Ill. App. 2d 472, 213 N.E.2d 425, *aff'd* (1966), 35 Ill. 2d 351, 221 N.E.2d 410.) Such remandment, however, is unnecessary here, as Conway has already purged his contempt by producing the testamentary document.

In view of our holding, it will not be necessary to consider other issues raised and, for the reasons stated, the judgment appealed from is reversed.

Reversed.

LORENZ and WILSON, JJ., concur.