THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANTHONY J. SCHMOLL, Defendant-Appellant.

Second District   No. 79-283

Opinion filed October 30, 1979.

Duane M. Kelley, James R. Vogler, and Robert G. McCoy, all of Winston and Strawn, of Chicago, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (William J. Blumthal, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This is an appeal from an order denying a motion by defendant, Anthony Schmoll, to dismiss or to discharge the contempt against him. He was arrested on July 29, 1976, and was charged with theft by deception and forgery. He was fingerprinted and signed the fingerprint cards that day, and signed other forms on August 5. Defendant moved for a speedy trial on August 27 and the court found probable cause at a preliminary hearing on September 9. The State then sent the fingerprint cards and other evidence (the allegedly forged documents) to the Northern Illinois Police Crime Laboratory for analysis. The crime lab reported that it could not make any final conclusion linking defendant's handwriting with the forged documents without additional known examples of defendant's handwriting. On November 4, 1976, both sides moved for discovery, the State asking, in part, for defendant to furnish handwriting exemplars pursuant to Supreme Court Rule 413. (Ill. Rev. Stat. 1977, ch. 110A, par. 413.) Defendant refused to comply with the order for handwriting exemplars, and on November 10 was held in contempt and returned to the custody of the sheriff until he complied with the order for exemplars. On December 10, the court ruled that defendant's conduct was a delay which would toll the speedy trial request. On that day, defendant also appeared and was given the chance to purge the contempt and provide the exemplars. Defendant asserted that the discovery order was unconstitutional, and he refused to comply. Roughly every 30 days thereafter, except when he was in Federal custody for a short period, defendant was again offered the chance to purge himself from the contempt but he refused to do so.

On September 9, 1977, defendant gave writing samples to police, and a hearing was held on September 26 regarding them. Defendant testified that the samples represented his handwriting, and he introduced additional samples. The State introduced the fingerprint cards and through expert testimony attempted to show that defendant was disguising his handwriting in those samples which he provided after he had signed the fingerprint cards. The court stated that the new samples were "print script" which differed from defendant's signature on the fingerprint cards. Defendant appeared again on October 19 and provided samples in court; the trial judge noted, however, that defendant was not writing "* * * with a continuous point of the pen on the paper throughout the signature." The October 19 samples were sent to the crime lab, which notified the State that they could not compare the samples, apparently because of the different types of writing. The monthly hearings continued, except for a short time when defendant was transferred to Federal custody and on May 2, 1979, defendant filed motions to dismiss or discharge the

contempt. They were denied, and on May 9 he again refused to provide samples of his handwriting. On May 30, 1979, defendant was granted a stay of further confinement and a personal recognizance bond pending this appeal. On June 28, 1979, the State filed a rule to show cause for criminal contempt against defendant. The criminal contempt proceeding has been stayed pending this appeal.

■■ Defendant contends first, that it is unconstitutional to require him to give handwriting samples at all. He urges that article I, section 10 of the Illinois Constitution of 1970, which provides that "No person shall be compelled in a criminal case to give evidence against himself * * *" imposes a higher standard than the fifth amendment to the United States Constitution which provides that "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." This argument is without merit since it has been held that the difference between the two provisions is semantic rather than substantive, and they have been given the same general construction. (*People ex rel. Hanrahan v. Power* (1973), 54 Ill. 2d 154, 295 N.E.2d 472.) With respect to handwriting samples specifically, it has been determined that a handwriting exemplar, in contrast to the content of what is written therein, like the voice or the body itself, is an identifying physical characteristic which is outside self-incrimination protections. *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951.

In a related argument, defendant contends that it is unconstitutional to require him to give handwriting samples in a writing style not his own. This is also basically a self-incrimination argument, suggesting that defendant is, in effect, being told to match his handwriting to the evidence the State has. Since a defendant may be required to say certain words (*United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926), or to wear certain clothing (*Holt v. United States* (1910), 218 U.S. 245, 54 L. Ed. 1021, 31 S. Ct. 2), we see no reason why he cannot also be required to provide a particular type of writing, such as a cursive script rather than a printed script. As the United States Supreme Court stated in *Gilbert v. California* (1967), 388 U.S. 263, 267, 18 L. Ed. 2d 1178, 1183, 87 S. Ct. 1951, 1953:

> "If, for some reason, an unrepresentative exemplar is taken, this can be brought out and corrected through the adversary process at trial since the accused can make an unlimited number of additional exemplars for analysis and comparison by government and defense handwriting experts. Thus, 'the accused has the opportunity for a meaningful confrontation of the [State's] case at trial through the ordinary processes of cross-examination of the [State's] expert [handwriting] witnesses and the presentation of the evidence of his own [handwriting] experts.' [Citation.]"

■■ Defendant next contends that in any event it was improper for him to be imprisoned for contempt in excess of six months without a jury trial. He views his contempt as a single act for which he was placed in jail for a term without limit. The State argues that defendant has committed a continuing series of contempts, one each time he appeared and refused to comply with the order. Defendant has cited *Yates v. United States* (1957), 355 U.S. 66, 2 L. Ed. 2d 95, 78 S. Ct. 128, for the proposition that a contempt may not be multiplied by continued questioning in an area in which information was refused. *Yates* involved a witness held in contempt for refusing to answer a question on cross-examination. The State repeatedly questioned in the same area, and the United States Supreme Court held that the repeated denials could not be viewed as additional contempts, since the area had already been covered. In our view, the general principal is sound and should apply here and we consider this to be factually a single contempt.

■■ Defendant also urges that after six months in jail, his imprisonment became one for a "serious" offense and that he was then entitled to either release or a jury trial. In support he relies on *Bloom v. Illinois* (1968), 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477. An examination of the opinion in *Bloom* shows that the supreme court, although referring occasionally to a "serious" offense, was nonetheless dealing with a criminal contempt, and was attempting to distinguish criminal contempts which were serious from those which were less serious. We conclude that the rule from *Bloom* applies only to cases of criminal contempt. See *In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 364 N.E.2d 430.

■■ ■ Since we conclude that the right to a jury trial in contempt proceedings applies only to criminal contempt where the sentence renders the offense a serious contempt, it becomes important to determine whether the contempt in the present cause is criminal or civil. Imprisonment imposed for a criminal contempt is punishment for acts in disrespect of the court or its process and for acts which tend to bring the court into disrepute or obstruct the administration of justice, and are for a definite term; imprisonment for civil contempt is remedial or coercive in nature, is imposed where the contemner fails to do something the court has ordered him to do for the benefit or advantage of another party to the proceeding, and the appropriate punishment is to commit the contumacious party to imprisonment until he has complied with the mandate of the court, since a mere fine or imprisonment for a specific term might not secure obedience to the order. (*People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736.) It is our opinion that the present cause falls clearly within the realm of civil contempt, since defendant has repeatedly refused to comply with a discovery order entered by the court to provide information that had been properly requested by the State. The

imprisonment which was imposed on defendant is an attempt by the trial court to coerce him into complying with that order. The court has not imposed a specific term of imprisonment on defendant, but rather, in the classic terms, defendant has the keys to his prison in his own pocket and need merely comply with the order to be released.

The State has asked that this court take notice of various Federal court proceedings involving this defendant; it has also filed additional information in the trial court for inclusion in the record after the notice of appeal was filed, and has appended information to its brief which is not in the record. We do not find the Federal court proceedings of any import in deciding this appeal, and we, of course, do not consider anything not properly a part of the record.

Finally, defendant urges that we should require dismissal of the pending criminal contempt charge. Since that charge is not part of the order appealed from, we decline to rule on the matter.

We accordingly affirm the trial court's denial of defendant's motions to dismiss or discharge the contempt and remand the cause for further proceedings.

Affirmed and remanded.

NASH and SEIDENFELD, JJ., concur.