PRAIRIE STATES PETROLEUM COMPANY, Plaintiff-Appellee, *v.* UNIVERSAL OIL SALES CORPORATION, Defendant-Appellant.

First District (1st Division)   No. 80-931

Opinion filed September 15, 1980.

David P. List and Jeffrey S. Bork, both of Sidley & Austin, of Chicago, for appellant.

William J. Harte, Ltd., and Richard J. Prendergast, Ltd., both of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Universal Oil Sales Corporation and its Indiana-appointed receiver Toy Arnett were held in contempt of court for violating an order entered by the court. They were fined $5,000 per day and $2,500 per day respectively. Universal Oil Sales and Arnett appeal.

On appeal, both parties contend that (1) the trial court lacked subject matter jurisdiction to enter the order on which the contempt charge is based; (2) Universal cannot be held in contempt because it was unable to comply with the trial court's order; (3) Universal was denied procedural due process because the court did not hold an evidentiary hearing; and (4) the fines should be stayed if the contempt convictions are affirmed. Additionally, Arnett contends that his contempt conviction cannot stand because (1) plaintiff failed to obtain leave to sue from the Indiana court and (2) the trial court lacked personal jurisdiction.

We reverse.

Prairie States Petroleum Company (Prairie States) is an Illinois corporation which distributes petroleum products to gasoline service stations in the Chicago metropolitan area. Universal Oil Sales Corporation is an Indiana corporation which sells petroleum products from refineries to distributors. On July 5, 1979, Prairie States filed a complaint in the circuit court of Cook County seeking an injunction restraining Universal from selling gasoline to other distributors and requesting damages.

On July 24, 1979, Basil Elias, president and principal stockholder of Prairie States, and Richard Parker, president of Universal, met in the chambers of the trial judge. No one else was present. During this meeting Elias and Parker entered into an agreement which, in part, formed the basis for the agreed order subsequently entered by the trial court. The pertinent provision of the order is as follows:

> "That UNIVERSAL OIL SALES CORPORATION will supply to PRAIRIE STATES PETROLEUM CO., INC., gasoline at a maximum price of 2-½ cents per gallon over the weighted average price of the gasoline supplied to UNIVERSAL OIL SALES CORPORATION on the following amounts for the respective months so long as the Department of Energy shall honor said gasoline allocations to UNIVERSAL OIL SALES CORPORATION."

At some point, the "2" was obliterated, thereby making the maximum price of gasoline only one-half cent per gallon over the weighted average price.

Richard Parker was slain on November 20, 1979. Mrs. Parker was charged with the slaying and incarcerated in Indiana. On December 7, 1979, Mrs. Parker and the estate of Mr. Parker petitioned the Indiana court to place nine oil companies, including Universal, in receivership. Upon its finding that an emergency existed, the Indiana court appointed Toy Arnett, an Indiana resident, receiver of the companies without notice to creditors.

On December 18, 1979, Prairie States filed a motion for rule to show cause why Universal should not be held in contempt for violating the agreed order of July 24, 1979. Prairie States alleged that Universal had refused to supply it with gasoline during November and December 1979. Universal moved to strike the motion on the ground that, as indicated in plaintiff's pleadings in an action brought in Federal court, Koch Refining Company refused to supply gasoline to Universal and that Universal was therefore unable to supply Prairie States. On January 22, 1980, Prairie States filed a supplemental motion for rule to show cause to which Universal responded, in its motion and memorandum to strike and dismiss, that the court lacked subject matter jurisdiction. On January 25, 1980, the trial court denied the motion to strike and dismiss and entered a rule to show cause.

The Indiana court approved and confirmed the appointment of Toy Arnett as receiver of all nine companies on January 25, 1980, after notice to creditors and a hearing. The court also found that the creditors present had no objections to the issuance of a temporary restraining order pursuant to Arnett's petition for relief from the Illinois court's order and ordered that same would be issued separately.

On January 29, 1980, the Indiana court entered a temporary restraining order prohibiting Arnett from supplying any customer of Universal with any product for less than the prevailing market price and specifically prohibiting the sale of gasoline to Prairie States at one-half cent over cost. This order was based on the following findings:

"1. That the Receiver has discovered a Court Order entered in the Circuit Court of Cook County, Illinois in Cause Number 79-4383 entitled Prairie States Petroleum Company vs. Marathon Oil Corporation, a corporation, and Universal Oil Sales Corporation, which provides in part that Universal Oil Sales Corporation is to supply Prairie States Petroleum Company gasoline at a maximum price of one-half cent per gallon over the weighted average price for the gasoline supplied to Universal Oil Sales Corporation in specified monthly allocations.

2. That at the time the Illinois State Court Order was entered, the prevailing margin in the industry was between five and ten cents margin per gallon.

3. That at the present time the prevailing market margin in the industry is five cents per gallon.

4. That Universal Oil Sales Corporation is supplying all customers other than Prairie States at a minimum of five cents margin per gallon.

5. That in light of the operating expenses of Universal Oil Sales Corporation and the existing debts and obligations of the company, the company requires a minimum of five cents per gallon in order to continue profitable operations and in order to protect existing creditors.

6. That Prairie States Petroleum Company is entitled to between one-third and one-half of the total allocations of the Universal Oil Sales Corporation.

7. That if Universal Oil Sales Corporation is required to continue to supply Prairie\ States Petroleum Company at one-half cent margin, the company could not operate and it would be to the immediate detriment of all existing creditors to allow the Receiver to continue to comply with the Illinois State Court Order."

A hearing on the petition for permanent relief was scheduled for February 4, 1980.

Both Prairie States and its attorney S. Ira Miller were notified of the February 4 hearing and sent copies of the temporary restraining order. Upon their failure to appeal in Indiana on February 4, 1980, the Indiana court permanently enjoined Arnett from selling products at less than the prevailing market price and from supplying Prairie States at one-half cent over cost.

In Illinois Toy Arnett was added as an additional respondent to the motion to show cause on January 28, 1980, and the contempt hearing was scheduled for February 13, 1980. On February 13, a special and limited appearance was filed on behalf of Arnett and Arnett moved to dismiss the proceedings against him on the ground that the trial court lacked personal jurisdiction. No hearing was held on this day.

On March 20, 1980, Prairie States filed a motion seeking to hold Arnett and Universal in contempt of court for violating the July 24, 1979, order. After a brief hearing on March 6, 1980, the Illinois court found Arnett and Universal in contempt of court and fined them $2,500 and $5,000 per day respectively.

First, Universal and Arnett contend that the trial court did not have subject matter jurisdiction. Specifically, they argue that both counts of the complaint were predicated on the Emergency Petroleum Allocation Act of 1973 (15 U.S.C. §751 *et seq.* (1976)); that section 211(a) of the Economic Stabilization Act of 1970, incorporated by reference in the Emergency Petroleum Allocation Act, vests exclusive original jurisdiction of cases or controversies arising under the Act in Federal district courts; and that therefore the court below did not have jurisdiction to hear the action brought by Universal and enter an order based thereon.

Through the Emergency Petroleum Allocation Act, Congress granted to the President the power to promulgate regulations allocating and pricing crude oil and refined petroleum products. (15 U.S.C. §753(a) (1976).) The President delegated his duties under the Act to the Federal Energy Administration. (Exec. Order No. 11, 790, 3 C.F.R. 157 (1974).) The Administration was established by Congress in the Energy Administration Act. 15 U.S.C. §762 (1976).

Section 211(a) of the Economic Stabilization Act of 1970 (Economic Stabilization Act Amendments of 1971, Pub. L. No. 92-210, §2, 85 Stat. 743 (1971)) is incorporated by reference in the Emergency Petroleum Allocation Act (15 U.S.C. §754(a)(1)(A) (1976)). Section 211(a) provides as follows:

"The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy; except that nothing in this subsection or in subsection (h) of this section affects the power of any court of competent jurisdiction to consider, hear, and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken by any agency under this title) raised in any proceeding before such court. If in any such proceeding an issue by way of defense is raised based on the constitutionality of this title or the validity of agency

action under this title, the case shall be subject to removal by either party to a district court of the United States in accordance with the applicable provisions of chapter 89 of title 28, United States Code [28 U.S.C.S. §1441 *et seq.* (1977)]."

■■ To decide this issue, we must first focus upon the meaning of the phrase "arising under." Generally, an action arises under Federal law for jurisdictional purposes if the right created by law is essential to the plaintiff's cause of action and is supported if the law is given one construction or effect and defeated if given another. (*Taylor v. Smith* (7th Cir. 1948), 167 F.2d 797.) The action must "really and substantially" involve a dispute or controversy respecting the validity, construction, or effect of U.S. law. (*Doby v. Brown* (4th Cir. 1956), 232 F.2d 504, 506, *cert. denied* (1956), 352 U.S. 837, 1 L. Ed. 2d 55, 77 S. Ct. 57, quoting from *Defiance Water Company v. City of Defiance* (1903), 191 U.S. 184, 190-91, 48 L. Ed. 140, 143, 24 S. Ct. 63, 66.) Finally, the fact that Federal law is incidentally involved does not necessarily give the Federal courts jurisdiction. See *Wells v. Universal Pictures Co.* (2d Cir. 1948), 166 F.2d 690.

■■ We find that the trial court had subject matter jurisdiction. Although Prairie States alleged that it was entitled to allocations under the Federal Energy Act, the act itself is only peripherally involved. The validity of the Energy Administration's allotments was not challenged nor was the interpretation of any Federal statute at issue. Rather, the action filed by Prairie States was merely one to prevent Universal from supplying others with gasoline which Prairie States alleged should have been delivered to it.

Secondly, Universal contends that it cannot be held in contempt because it was unable to comply with the Illinois court's order.

■■ Civil contempt is defined as "an attempt by a court to compel compliance with its orders." (*County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 135, 319 N.E.2d 472, 475.) The contempt order entered below is clearly civil in nature since its purpose was to compel Universal's compliance with the agreed order. However, a party cannot be held in contempt when he is unable to comply through no fault of his own. (*Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 364 N.E.2d 430.) "A civil contempt decree must provide defendant with the keys to his cell enabling him through compliance with the terms of the command to purge himself of contempt." *Continental Illinois National Bank v. Brach* (1979), 71 Ill. App. 3d 789, 792-93, 390 N.E.2d 373, 375-76, citing *People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736, and *Welding Industrial Supply Co. v. Northtown Industries, Inc.* (1978), 58 Ill. App. 3d 625, 374 N.E.2d 1002.

In *Atlantic Trust Co. v. Chapman* (1908), 208 U.S. 360, 371, 52 L. Ed. 528, 533, 28 S. Ct. 406, 409, the court stated:

> " 'The receiver is but the creature of the court; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court. *Verplanck v. Mercantile Ins. Co.* 2 Paige, 452.' In *Porter v. Sabin,* 149 U.S. 473, 479, 37 L.ed. 815, 818, 13 Sup. Ct. Rep. 1008, 1010, the court said: 'When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate; the possession of the receiver is the possession of the court; and the court itself holds and administers the estate, through the receiver as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it,' [citations]."

Upon appointment of a receiver, the functions of the corporation's managers and officers are suspended and the receiver stands in their place. *Jefferson Park Realty Corp. v. Kelley, Glover & Vale* (1938), 105 Ind. App. 313, 12 N.E.2d 977.

■■ In its order placing Universal in receivership, the Indiana court granted possession of and control over the corporation's property and assets to the receiver and authorized the receiver to carry on, operate, and manage the business. Universal was thereby divested of control over its property and incapable of directing its own affairs. Hence, Universal was unable to comply with the Illinois order and purge itself of contempt. We therefore find that the court below incorrectly held Universal in contempt.

Third, Arnett contends that the court below did not have jurisdiction to enter the contempt order against him because Prairie States did not obtain leave to sue in the Indiana court and did not serve him with summons.

■■ With respect to this issue, it is important to note that the receiver is an officer of the court which appointed him. (*People ex rel. Scott v. Pintozzi* (1972), 50 Ill. 2d 115, 277 N.E.2d 844, citing *Anderson v. Macek* (1932), 350 Ill. 135, 182 N.E. 745.) Therefore, any party seeking to proceed against a receiver must obtain the permission of the appointing court. (*Evans v. Illinois Surety Co.* (1925), 319 Ill. 105, 149 N.E.802.) It has also been held that a receiver cannot be punished for contempt for disobeying an order when the order was not made in the action where the receiver was appointed. (*Merritt v. Sparling* (1895), 88 Hun. 491, 34 N.Y.S. 882.) We therefore find that because Prairie States did not notify the Indiana court of the action against Arnett, the trial court was without jurisdiction to find Arnett in contempt.

We also note that Prairie States questions the legitimacy of the temporary restraining order and subsequent injunction entered by the Indiana court and raises questions regarding the enforceability of the Illinois order. However, Prairie States did not appear in Indiana after receiving notice. Furthermore, the validity and enforceability of the agreed order entered below is not in issue in this appeal.

Due to our disposition of this case, we need not consider the other issues raised on appeal.

For the foregoing reasons, we reverse the contempt orders from which Universal and Arnett appeal.

Orders reversed.

GOLDBERG, P. J., and O'CONNOR, J., concur.