*In re* ESTATE OF BRIAN R. HADER, a Minor (The Hanover Insurance Company, Petitioner-Appellee, *v.* Roselle State Bank & Trust Company, Respondent-Appellant (Cook County, Appellee)).

First District (2nd Division)   No. 82—702

Opinion filed May 10, 1983.

Ray F. Drexler, Alan S. Ganz, and Stephen D. Sharp, all of Rooks, Pitts, Fullagar & Poust, and Edward S. Mraz, of Edward S. Mraz, Ltd., both of Chicago, for appellant.

James M. Corcoran, Jr., Sheribel Rothenberg, and Randy S. Gussis, all of D'Ancona & Pflaum, of Chicago, for appellee Hanover Insurance Company.

PRESIDING JUSTICE DOWNING delivered the opinion of the court:

This appeal arises from a February 23, 1981, order of the trial court denying the appearance of Rooks, Pitts, Fullagar and Poust (Rooks) as attorneys on behalf of Roselle State Bank and Trust Company (Roselle) in a citation proceeding pursuant to section 16—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 16—1).

By the February 23 order, the trial court also denied Roselle's motion to vacate an October 14, 1981, order finding Roselle in contempt of court for its failure to comply with a citation to discover information to produce documents pursuant to section 16—1. Roselle was assessed a fine of $1,500.

The following issues are raised on appeal: (1) was the trial court's order of February 23, 1982, a final and appealable order subject to the review of this court; (2) does this court lack jurisdiction to review the October 14, 1981, contempt order of the trial court; (3) was Rooks properly denied leave to file its appearance; (4) did the trial court abuse its discretion when it found Roselle to be in civil contempt of court; and (5) is Roselle's request for attorney fees properly before the court?

The underlying facts of this case are as follows: James R. Hader (Hader) was appointed plenary guardian of the estate of his son, Brian, on October 15, 1980. Brian's estate consisted of $182,190.85 received as settlement of a personal injury suit. John T. Conroy was attorney for Hader and on February 17, 1981, Conroy filed a petition requesting that the probate court issue a citation to Hader to produce all records concerning the property of Brian Hader, appoint a special administrator for Brian and remove Hader as plenary guardian.

As a result of Conroy's petition, a citation was issued against Hader ordering him to appear before the court and appointing Leon M. Despres as guardian *ad litem* (GAL) for Brian. The GAL notified the Hanover Insurance Company (Hanover), the surety of Brian's estate, that there was evidence that the estate was in jeopardy and requested that Hanover join in efforts to protect the estate. James M. Corcoran, Jr. entered his appearance as attorney for Hanover on April 14, 1981.

On April 14, 1981, James R. and Janice K. Hader were examined under oath and disclosed that two bank accounts at Roselle State Bank and Trust Company (Roselle) contained the majority of Brian's estate. Judge Alvin Turner issued an order on April 28, 1981, restraining the Haders from removing funds from these accounts and ordering evidence of ownership of these accounts to be assigned to Hanover or to the GAL.

On June 29, 1981, Corcoran filed a petition requesting that three citations to discover information and to produce documentation issue to Manning Savings and Loan Association (Manning), Palatine National Bank (Palatine) and Roselle. That same day, the citations were issued, returnable on July 23, 1981, requiring an appearance on behalf of the three named institutions for purposes of examination regarding knowledge of the property of Brian and requesting the production of

all information in their possession and control regarding the property of Brian. The form citation contained a small print admonition concerning exposure to contempt of court for failure to comply with the citation. Each citation was timely served by the sheriff of each county of the residence of the three respondents.

On July 23, 1981, Manning appeared in court and a hearing took place. Palatine transmitted information to Corcoran pursuant to the citation but did not appear at the hearing. As a result of Roselle's failure to appear or respond adequately, Corcoran petitioned for, and the court issued, an order directing the clerk of the court to issue a citation for rule to show cause why Roselle should not be held in contempt of court for its failure to respond to the citation or appear at the July 23 hearing. The return date of the rule to show cause was September 10, 1981. On September 10, a hearing was held on the issue of contempt. The testimony from that hearing shows that on July 24, an employee of Roselle discovered that the citation for the July 23 hearing had been misfiled. Employees of Roselle testified that they had attempted to contact Corcoran in order to comply with the citation by providing the requested information. Although Corcoran acknowledged receiving these phone calls, he refused to talk to the employees, claiming that to do so would violate Rule 7—104(a) of the Illinois Code of Professional Responsibility (87 Ill. 2d R. 7—104(a)), which prohibits communications, absent the opposing attorney's consent, by an attorney during the course of representation with a party he knows to be represented by a lawyer in that matter. At the September 10 hearing, Roselle produced some of the documentation requested by Hanover in the citation. Roselle had previously transmitted to Hanover additional information requested by the citation.

Edward D. Mraz, one of Roselle's attorneys, had not filed an appearance to represent Roselle prior to the September 10 hearing, nor did he request permission at the hearing to do so. There was no objection to Mraz' representation, but Corcoran suggested that an appearance be filed on behalf of the banks to facilitate continuing notice in the matter. The citations issued were continued, and Corcoran revealed that additional information was yet to be provided by both Palatine and Roselle.

Following the discovery hearing, argument was heard on the rule to show cause why both banks should not be held in contempt. Judge Turner concluded that both banks were in civil contempt of the court. Roselle was fined $1,500 and Palatine was fined $750. Judgment for contempt was entered on October 14, 1981.

On November 12, 1981, Rooks filed a written appearance on be-

half of Roselle and the following pleadings: (1) a motion to vacate the memorandum of order and judgment for contempt; and (2) a memorandum in support of the motion to vacate. Each of these pleadings revealed that Rooks represented Roselle and contained Rooks' address and identified the attorneys at Rooks' firm handling the Roselle matter. Rooks was involved in subsequent matters on Roselle's behalf, including a motion to certify the report of proceedings from the September 10 hearing, presented to Judge Turner on December 4, 1981, by Stephen D. Sharp of Rooks. Subsequent to this motion, several continuances on certain of Rooks' motions were made and notices of such continuances were filed. Upon the insistence of Corcoran, on January 7, 1982, Rooks filed a motion for leave to file an appearance as additional counsel. On January 29, 1982, Hanover filed a petition to strike the appearance of Rooks and to strike Roselle's motion to vacate the contempt order on the basis that Rooks' appearance was void and therefore the motion to vacate was of no effect. Hanover alleged the appearance originally filed was void for failure to comply with circuit court of Cook County Rule 1.4.

A hearing on Hanover's motion to strike the pleadings of Roselle and Rooks' appearance was held on February 23, 1982. At the beginning of the February 23 hearing, Alan S. Ganz of Rooks turned over to the GAL the last of the assets of the Hader estate in Roselle's possession. The focus of the hearing then turned to Rooks' appearance and Roselle's motion to vacate the contempt order. Following argument, the trial court determined that Rooks had failed to comply with the requirements of circuit court Rule 1.4 which reads as follows:

"1.4 Appearance and Withdrawal of Attorneys

(a) Addressing the court—An attorney shall file his appearance before he addresses the court unless he is presenting a motion for leave to appear by intervention or otherwise.

(b) Notice of withdrawal—An attorney may not withdraw his appearance for a party without leave of court nor unless he has given reasonable notice of the time and place of the presentation of the motion for leave to withdraw by personal service or by registered or certified mail, directed to the party represented by him at his last known business or residence address.

(c) Motion to withdraw—The motion for leave to withdraw shall be in writing and, unless another attorney is substituted, shall state the last known address of the party represented. The motion may be denied by the court if the granting of it would delay the trial of the case."

The trial court then granted Hanover's motion to strike Rooks' ap-

pearance. The trial court further denied Roselle's motion by Rooks to vacate the contempt order of October 14, 1981. The order of February 23 included a phrase which read: "There is no reason for delaying enforcement or appeal of this order."

On March 23, 1982, Rooks, on behalf of Roselle, filed a notice of appeal challenging: (1) the trial court's order of October 14, 1981, requiring the continued production of documents regarding the Hader estate and finding Roselle in civil contempt; (2) the order of December 14, 1981, in which the trial court denied Roselle's motion to certify the report of proceedings from the September 10 hearing; and (3) the February 23 order. Additionally, for the first time since these proceedings began, Rooks has made a request in this court for attorney fees.

Hanover filed a motion in this court challenging our jurisdiction to review the February 23 order of the trial court and the timeliness of Roselle's appeal of the October 14 and December 14, 1981, orders. Hanover's motion to dismiss those portions of Roselle's appeal dealing with our authority to review the trial court's orders was taken with this appeal.

I

■ Initially, we consider our authority to review the orders of the trial court. By motion filed with this court, Hanover contends that the February 23, 1982, order striking Rooks' motion for leave to file its appearance is not a final and appealable order. Additionally, based upon the alleged faulty appearance of Rooks, the trial court summarily denied Roselle's motion to vacate the contempt order filed by Rooks. The trial court concluded the February 23 order by stating that "there [was] no reason for delaying enforcement or appeal of the order."

It must be remembered that even though an order of a trial court includes language which indicates that there is no just reason for delaying the appeal of that order, the order will not be appealable if it is not final. (*Chicago Title & Trust Co. v. Guaranty Bank & Trust Co.* (1978), 59 Ill. App. 3d 362, 364, 375 N.E.2d 522.) Generally, "an order striking the appearance of an attorney pertains merely to a matter collateral to the main issue and is not a final and appealable order." *Chicago Title & Trust Co. v. Guaranty Bank & Trust Co.* (1978), 59 Ill. App. 3d 362, 363.

Roselle argues that the trial court's denial of Rooks' motion for leave to file its appearance is so intimately linked to their rights in the contempt matter that the February 23 order is final and appealable. After denying Rooks' appearance, the trial court denied Roselle's

motion to vacate the October 14 contempt order, concluding that all matters filed by Rooks on Roselle's behalf were without effect due to the faulty appearance.

The trial court's decision to deny Rooks' motion to file its appearance as additional counsel for Roselle was based on its understanding of the requirements of circuit court Rule 1.4. However, Rooks was in strict compliance with Rule 1.4. (*Tobias v. King* (1980), 84 Ill. App. 3d 998, 1001, 406 N.E.2d 101.) This court in *Tobias* points out that Rule 1.4 is a supervisory tool without specific sanctions for failure to comply with it. (*Tobias v. King* (1980), 84 Ill. App. 3d 998, 1001.) Rule 1.4 requires an attorney to file an appearance, so as to inform the court and the parties of who is representing each party and where that person may be served with necessary notices. (*Tobias v. King* (1980), 84 Ill. App. 3d 998, 1001.) Here, the record shows numerous pleadings which informed the court and interested parties that Rooks represented Roselle and where they could be contacted. Hanover was notified by the November 12, 1981, pleadings that Rooks represented Roselle. The pleadings included the name, address and phone number of the attorney handling the matter at Rooks. Hanover has not shown how Rooks' representation or the manner in which Rooks attempted to appear on behalf of Roselle prejudiced Hanover or delayed, inconvenienced or confused the court or the parties. (*Tobias v. King* (1980), 84 Ill. App. 3d 998, 1001.) Frankly, we are at a loss to understand Hanover's actions and the trial court's orders in this respect. Nothing has been pointed out in the record which justified these delaying, harassing and unnecessary tactics.

After the trial court erroneously determined that Rooks was not in compliance with Rule 1.4, it summarily denied all motions filed by Rooks, including Roselle's motion to vacate the contempt order of October 14, 1981. Since Rooks was in strict compliance with Rule 1.4, the additional pleadings filed on Roselle's behalf should not have been summarily denied. The motion to vacate the contempt order was timely filed and a hearing on that motion should have been held. Although the underlying matters regarding the estate of Brian Hader were continuing, the rights of Roselle regarding the contempt order of October 14 were concluded by the February 23 order, which was, therefore, appealable. *Almon v. American Carloading Corp.* (1942), 380 Ill. 524, 530, 44 N.E.2d 592.

■ Hanover also asserts that Roselle may not appeal the October 14 contempt order since it failed to file a notice of appeal within 30 days of that order pursuant to Supreme Court Rule 303 (87 Ill. 2d R. 303). However, the post-judgment motion to vacate the October 14

contempt order was timely filed, and the denial of that motion is reviewable, as was the related order of December 14, 1981, regarding the certification of the report of proceedings of October 14. (*Sears v. Sears* (1981), 85 Ill. 2d 253, 258, 422 N.E.2d 610 (where the supreme court concluded that a notice of appeal must be filed within 30 days of denial of a post-trial motion and filing a second post-trial motion will not extend that time limit).) For the aforesaid reasons, Hanover's motion to dismiss portions of this appeal is denied.

## II

■ Having determined that the orders of the trial court in this matter are properly before this court, we now address the propriety of the contempt order entered against Roselle. It is Roselle's contention that the trial court abused its discretion by finding it to be guilty of civil contempt and imposing a penalty of $1,500. We agree.

In its October 14, 1981, order finding Roselle guilty of civil contempt, the trial court found Roselle "did knowingly, wilfully and intentionally refuse to, and did not, produce \*\*\*" and did so "for the purpose of obstructing, impeding and thwarting the administration of justice and defy the processes of the court." Further, the court found that Roselle "failed to show cause why it should not be punished as and for civil contempt for knowingly, wilfully and intentionally violating the citation \*\*\*."

Contempt of court has generally been defined as " ' "conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute." ' " (*People v. Robinson* (1981), 100 Ill. App. 3d 660, 662, 427 N.E.2d 288, quoting *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 59-60, 364 N.E.2d 50, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750.) Contempt proceedings possess characteristics of both civil and criminal law, yet they are neither civil nor criminal. (*47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 233, 371 N.E.2d 294, *appeal denied* (1978), 71 Ill. 2d 598.) Contempt proceedings which are civil in nature are defined as those prosecuted to enforce the rights of private parties and to compel obedience to orders of the court for the benefit of opposing parties. (*47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1978), 56 Ill. App. 3d 229, 233.) A finding of civil contempt is a matter of fact to be determined by the trial court, and it will not be disturbed on review unless there is a clear abuse of discretion. (*People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1982), 108 Ill. App. 3d 266, 276, 438 N.E.2d

1273.) However, "[a] civil contempt decree must provide defendant with the keys to his cell, enabling him through compliance with the terms of the command to purge himself of contempt." *Continental Illinois National Bank v. Brach* (1979), 71 Ill. App. 3d 789, 792-93, 390 N.E.2d 373.

In the instant case, there is no dispute that Roselle failed to respond to the citation to discover information on or before the hearing which was held on July 23, 1981. However, the record reveals Roselle's continued attempts to comply with the citation and that full compliance with the citation was achieved on or before February 23, 1982. The trial court was persuaded that Roselle had so inconvenienced the parties and the court by its failure to comply with the citation on or before the July 23 return date that an order of contempt was warranted.

We have searched the record for any evidence that the action of Roselle was wilful, intentional or contumacious. The record fails to support these essential findings, nor could counsel for Hanover at oral argument point to any evidence to support these findings. There is no dispute that Roselle failed to comply through office procedure carelessness. But once that fact was discovered, Roselle attempted to do what had to be done. What followed was the amazing lack of cooperation on the part of the attorney for Hanover. We believe this entire problem could have been, yes, should have been, avoided by normal cooperation rather than the unfortunate attempt to use Rule 7—104(a) of the Code of Professional Responsibility (87 Ill. 2d R. 7—104(a)).[1] As we understand the record, Roselle did not have an attorney of record in the citation proceedings at the time Roselle employees were attempting to work with Hanover's attorney. Recipients of citation proceedings should not be compelled to employ attorneys to process the furnishing of information and documents of the type involved in this matter.

Roselle, having been served with a rule to show cause, attempted to furnish everything requested. In our opinion, Roselle, even if its

---

[1]"Rule 7—104. Communicating With One of Adverse Interest

(a) During the course of his representation of a client a lawyer shall not

(1) communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so; or

(2) give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client."

conduct could be characterized as contumacious, purged itself. The purpose of imposing any civil sanction against Roselle abated, and further sanctions were unwarranted. (*People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1982), 108 Ill. App. 3d 266, 277.) As we have noted, counsel for Hanover was less than cooperative in Roselle's efforts to comply with the citation. It is not readily understood why counsel for Hanover was not anxious to have Roselle comply with the citation but Roselle should not be punished for the failure of its efforts which, in part, resulted from uncooperative opposing counsel.[2] See *Prairie States Petroleum Co. v. Universal Oil Sales Corp.* (1980), 88 Ill. App. 3d 753, 758, 410 N.E.2d 1008 (where it is noted that a party cannot be held in contempt when he is unable to comply with court order through no fault of his own).

### III

■ Roselle contends that they are entitled to attorney fees for defending frivolous and untrue trial court pleadings and for prosecuting this appeal. Roselle's request for attorney fees is made pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 41), now codified as section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—611). According to Roselle, the attorney for Hanover intentionally made false statements to the trial court and filed pleadings (*i.e.*, rule to show cause) which made it appear that Roselle was refusing to comply with the citation to discover information. Also, Roselle points out that Hanover's attorney was well aware of Rooks' representation of Roselle and yet persisted in requests to have Rooks file an appearance.

Hanover argues that the issue of attorney fees is not properly before this court because it was not raised in the trial court and is therefore waived. Also, Hanover argues that a "citation to discover" does not fall within the anticipated scope of section 41.

It has long been established in Illinois that a court of review may entertain a motion for attorney fees pursuant to section 41 even though such a request was not made in the trial court. (See *Brooks v. Goins* (1967), 81 Ill. App. 2d 12, 21-22, 225 N.E.2d 707.) We feel, however, that a determination of the propriety of attorney fees in this case is better left to the trial court after a hearing on remand.

---

[2]At oral argument before this court we wondered why phone calls from Roselle employees were refused by counsel for Hanover. The argument offered by counsel for Hanover that to answer the calls would violate Rule 7—104(a) of the Illinois Code of Professional Responsibility (87 Ill. 2d R. 7—104(a)) is without merit.

The finding of contempt is reversed and the cause is remanded to the trial court for a hearing on the issue of attorney fees. Because we have reversed the finding of contempt, it is unnecessary for us to address the issue raised by Roselle regarding the nature and amount of the fine imposed.

The judgment of the circuit court of Cook County is reversed and the cause remanded for a hearing on the issue of attorney fees.

Reversed and remanded.

PERLIN and HARTMAN, JJ., concur.