*In re* MARRIAGE OF JULIE A. BETTS, Petitioner-Appellee, and JOHN A. BETTS, Respondent-Appellant.

Fourth District   No. 4—87—0926

Opinion filed July 28, 1988.—Rehearing denied August 31, 1988.

John A. Betts, of Marseilles, *pro se* and Kenneth A. Kozel, of Petz & Kozel, of La Salle, for appellant.

Paul R. Wilson, Jr., of Wilson Law Office, of Rantoul, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

The respondent ex-husband in this appeal was held in contempt of court on October 9 and December 11, 1987, for failure to pay past-due child support. Respondent appeals these contempt findings and the respective purge orders, as well as several other issues relating to child support due, venue and attorney fees. We affirm.

On May 8, 1987, the trial court temporarily modified respondent's child support obligation. The docket entry reads:

> "Respondent petitioned for a suspension or reduction of support. *** It was ordered that the child support be reduced from September 10, 1986, until November 10, 1986, to the amount of $76.57 per month for both children and after November 10, 1986 return to original amount. *** The petitioner petitioned for a rule to show cause. The petition was allowed."

After the modification order was issued, respondent was ordered to show cause why he should not be held in contempt for failing to pay child support from September 1986 through May 1987. Hearings were held on July 10 and October 9, 1987, and the contempt finding was entered on the latter date.

First, respondent unsuccessfully argues the petitions to show

cause were defective because they were certified rather than verified. Effective January 1, 1984, the Code of Civil Procedure was amended to permit pleadings to be verified by certification. (Ill. Rev. Stat., 1984 Supp., ch. 110, par. 1—109.) Via the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—101 *et seq.*), the amendment is made applicable to section 403 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 403) by sections 105(a) and 410 of the Act (Ill. Rev. Stat. 1987, ch. 40, pars. 105(a), 410). Respondent's argument that section 1—109 contained in the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 1—109) is inapplicable to the Civil Practice Law in article II of the same Code is absurd.

 In a circuitous manner, respondent next argues the rule to show cause was erroneously entered on May 8, 1987, hence the contempt finding on October 9, 1987, was not supported by the record. Respondent claims the rule to show cause was inappropriately based on the modified order also entered that day, rather than on the original dissolution order.

Petitioner submits that the rule to show cause was entered on May 8 simply because respondent did not pay child support from September 1986 to May 1987. We agree. The docket entry of May 8 clearly indicates the trial court separately considered respondent's petition for modification and petitioner's rule to show cause. The allowance of the latter petition was not triggered by the modification order of the same date; rather, it was the inevitable result of respondent's longtime neglect of his child support duties.

 Respondent's notice of appeal filed December 31, 1987, specified he is in part appealing from the October 9 and December 11, 1987, contempt judgments. The May 8, 1987, judgment is not listed; therefore, petitioner refused to address the issues raised by respondent relating to the May 8 modification order and argues review of that decision is not within this court's jurisdiction.

Supreme Court Rule 303(c)(2) requires a notice of appeal to "specify the judgment or part thereof appealed from" (107 Ill. 2d R. 303(c)(2)) so that the successful party in the trial court is advised of the nature of the appeal. To fulfill this purpose, a notice of appeal is to be liberally construed so that when it is deficient in form only, and not in substance, the appellate court is not deprived of jurisdiction. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380; *Dillman & Associates, Inc. v. Capitol Leasing Co.* (1982), 110 Ill. App. 3d 335, 442 N.E.2d 311.) Appeals of unspecified judgments were allowed in *Burtell* and *Dillman* because the appellees

were not prejudiced thereby and the specified orders related directly back to the order sought to be reviewed.

Such interrelation is lacking in this case. The order of which respondent complains temporarily modified his child support obligation. There is nothing in the record linking that May 8 order to the later judgments of contempt on October 9 and December 11, 1987. The notice filed, which lists only the latter dates, did not adequately inform petitioner that respondent was also appealing from the modification order. Accordingly, we have jurisdiction only to the extent respondent appeals the October 9, 1987, contempt finding by arguing the corresponding rule to show cause was erroneously based on a modification order. We have already rejected that argument.

On December 30, 1987, respondent deposited a money order in the amount of $2,394.19 with the clerk of the Illinois Appellate Court, Fourth District, satisfying the October 9 and December 11, 1987, orders relating to child support and attorney fees. We find respondent's payment renders moot his arguments relating to those orders; however, we find it necessary to address the merits.

■■ ■ Respondent complains he should have not been adjudged in contempt on December 11, 1987, for failure to pay child support. The record reflects respondent moved to dismiss the petition for rule to show cause on the grounds that he paid his child support obligation in full on December 10, 1987, one day prior to the hearing on the petition. The trial court found respondent in contempt even though it acknowledged no support was due.

Whether and on what grounds a party is guilty of contempt and the decision whether or not to punish a contemnor rests within the sound discretion of the trial court. Such discretion will not be reversed, except where it has been grossly abused. (*In re Marriage of Wassom* (1988), 165 Ill. App. 3d 1076, 519 N.E.2d 1147.) We find no abuse of discretion. For over six months, respondent had been delinquent in paying the child support due for the period May 8, 1987, through July 10, 1987. We agree with the trial court's finding that "the respondent *** willfully violated the court order relative to support." Although we are not fully aware of the details of the trial court's motivation for its judgment, we find it was contemptuous of respondent to wait to pay the past-due support on the eve of the date set for hearing.

We note it is the appellant's obligation to furnish this court with an adequate record of the trial court proceedings. Although transcripts of the October 9 and December 11 hearings were available, respondent chose not to request copies for our perusal. Without more,

this court is not compelled to look further than the common law record before us.

■■ Respondent also finds fault with the purge orders issued in conjunction with both contempt judgments issued on October 9 and December 11, 1987. On October 9, the trial court found respondent did not pay child support from September 8, 1986, through May 8, 1987, in the amount of $1,533.14. Respondent was sentenced to six months in jail and granted leave to purge himself by paying the sum due plus attorney fees of $511.05.

For failure to pay child support from May 8, 1987, to July 10, 1987, respondent was sentenced on December 11, 1987, to six months' imprisonment and allowed the opportunity to purge himself of contempt by paying the petitioner $350 for her attorney fees. No support was due.

Respondent claims the trial court did not have the authority to include attorney fees in the October 9 purge order, or make them the sole term in the command to purge issued on December 11, 1987.

First, we address the October 9 order. Respondent was found in contempt because he did not pay $1,533.14 in child support. Section 508(b) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 508(b)) is the mandatory provision by which the trial court, in a proceeding to enforce an order for child support, must order the noncustodial parent to pay the custodial parent's costs and reasonable attorney fees if the failure to pay was without cause or justification. (*Fogliano v. Fogliano* (1983), 113 Ill. App. 3d 1018, 448 N.E.2d 245.) The docket entry reporting respondent's wilful and contumacious refusal to pay child support when he had sufficient funds to pay is self-evident of conduct without cause or justification. *Wassom*, 165 Ill. App. 3d 1076, 519 N.E.2d 1147.

It is clear an award of attorney fees is the inevitable result of a proceeding to enforce a child support order. However, neither party cites appropriate case law to either refute or support the issue of whether it is proper for the trial court to order the payment of attorney fees as one of the contemnor's "keys to his cell." *Continental Illinois National Bank v. Brach* (1979), 71 Ill. App. 3d 789, 390 N.E.2d 373.

This court is not obligated to act as an advocate for either party or search the record to find support for a respective position. Accordingly, we dispense with this issue solely on the basis of public policy. Respondent was adjudged in contempt because he did not pay child support and petitioner incurred attorney fees in order to compel him to fulfill his obligations. The policy behind section 508(b) is to make a

noncustodial parent accountable for the costs of his or her contemptuous refusal to pay child support.

It is logical and appropriate under the circumstances of this case to require the contemnor to pay both his child support debt and the attorney fees incurred as a result of his earlier failure to pay child support in order to avoid a contempt-related jail sentence. After assessing attorney fees, as required under section 508(b), the trial court is not mandated to require their payment in order to purge a contempt finding. However, as in this case, the trial court may do so. The record suggests respondent has the present ability to pay and there is a concrete and specific connection between his contemptuous conduct and the attorney fees petitioner incurred.

■ We find the December 11, 1987, order requiring respondent's payment of $350 in attorney fees to purge was an appropriate remedy for his contemptuous conduct. Contempt of court has been defined as "conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute." (*In re Estate of Hader* (1983), 114 Ill. App. 3d 611, 618, 449 N.E.2d 540, 546.) Respondent's last-minute payment of the past-due support on December 10 was a mockery of the trial court causing needless inconvenience and cost to all. The contumacy is further amplified by the fact that respondent, while a litigant, was also an officer of the court and should have conducted himself accordingly. For the reasons already given we affirm the finding of contempt on December 11 and approve the purge order demanding that respondent bear the cost of the reasonable attorney fees of the contempt proceeding.

■ Respondent argues he has "paid twice" his child support obligation, a fact he contends this court acknowledged in *In re Marriage of Betts* (1987), 155 Ill. App. 3d 85, 507 N.E.2d 912 (*Betts* I). Respondent requests leave to assert a setoff on remand.

We find respondent has misread *Betts* I. On July 25, 1986, the trial court found respondent in contempt and ordered him to pay $12,950 in past-due child support. The trial court calculated the total arrearage from the date the judgment of dissolution was entered in 1982, with an allowance made for one $70 payment, while the petition for rule to show cause requested past-due support for the calendar years 1984 to 1986 only. This court in *Betts* I recognized the trial court's error, but found the issue waived because respondent had fully complied with the order and did not expressly raise this issue in the trial court or on appeal. (*Betts*, 155 Ill. App. 3d at 103, 507 N.E.2d at 924.) This court held:

"Actual payment of the entire amount in full, however, renders the point moot. There is nothing to be accomplished by reversing this purging order, as respondent requests. The money has been paid; past-due support obligations have been met." *Betts*, 155 Ill. App. 3d at 104, 507 N.E.2d at 925.

The above quotation acknowledges payment of the 1984 through 1986 obligation, but declares the issue of overpayment waived. On December 11, 1987, the trial court again heard respondent's "paid twice" argument, and the docket entry similarly reflects the waiver theory:

"The respondent's motion to reconsider payments made to the children as a set-off against support was heard. The court held that the parties are bound by the judgments of this court as to support arrearages on the rule to show cause and that they cannot go back and relitigate what has been determined or could have been determined in those judgments. The motion was denied."

The May 8, 1987, rule to show cause related to the past-due support from September 1986 to May 1987. Respondent was asked to pay that amount only once, on December 11, 1987. His payment to the clerk of the Appellate Court, Fourth District, on December 31, 1987, moots this issue.

We decline to address respondent's frivolous arguments addressing the nonissues of accounts stated and *laches*.

■ Respondent once again raises the poverty defense to excuse his child support obligations. He made the same argument in *Betts* I, and failed. (*Betts*, 155 Ill. App. 3d at 100, 507 N.E.2d at 922.) This time respondent contends the petitioner conceded his insolvency when she filed a motion alleging respondent's inability to pay reviewing costs. Petitioner's motion does not remedy respondent's failure to raise the poverty defense at the trial court level.

■ Respondent next asserts the trial court exceeded its authority when it ordered post-majority child support of the parties' physically and mentally competent daughter, Jodie. The docket entry for October 9, 1987, in part reads:

"The court found that the judgment of dissolution should be modified.

It was therefore ordered that the judgment of dissolution be modified to require the respondent to pay child support payments of $35 per week from the date she attained majority until she graduated from high school, a total of thirteen weeks for a total of $455, to be paid by December 31, 1987, and the re-

spondent to pay to Illinois Wesleyan University or to such college where Jodie may be enrolled, the sum of $1,200 per semester as long as Jodie remains a full time student, to be paid on December 31, 1987, or before, and June 30, 1988, or before and like dates each year thereafter."

First, respondent erroneously maintains the appeal of *In re Marriage of Betts* (1987), 159 Ill. App. 3d 327, 511 N.E.2d 732 (*Betts* II), reversed without remand the trial court's finding that respondent was responsible for the daughter's support for the 13 weeks between her 18th birthday and her high school graduation. The *Betts* II appeal dealt only with the notice of the hearing on the motion seeking modification of the support order. The reversal was for improper service and did not touch on the merits of the case.

In addition, respondent mistakenly interprets section 513 of the Act. (Ill. Rev. Stat. 1985, ch. 40, par. 513.) Section 513 provides:

"Support for Non-minor Children and Educational Expenses. The court may award sums of money out of the property and income of either or both parties for the support of the child or children of the parties who have attained majority and are not otherwise emancipated only when such child is mentally or physically disabled ***. The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property and income of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." Ill. Rev. Stat. 1985, ch. 40, par. 513.

Respondent maintains section 513 prohibits child support beyond a child's 18th birthday so long as the child is neither physically nor mentally disabled. The court in *In re Marriage of Taylor* (1980), 89 Ill. App. 3d 278, 411 N.E.2d 950, rejected respondent's argument and interpreted the cited statute as follows:

"We do not believe that the legislature intended to allow education and maintenance expenses only for emancipated children with physical or mental disabilities. The first sentence of section 513 provides for the support of mentally or physically dis-

abled children. The second sentence, by use of the word 'also,' describes *another* situation in which an emancipated child can be provided for. That situation involves 'the education and maintenance' of children who have reached their majority. There is no requirement that the emancipated child be mentally or physically disabled where the support ordered is for education and maintenance expenses." *Taylor*, 89 Ill. App. 3d at 282, 411 N.E.2d at 954.

Respondent further complains that the trial court did not also require petitioner to contribute to the daughter's education expenses. It is true section 513 directs the trial court to consider the financial resources of both parents and the child when awarding post-majority education maintenance. Unfortunately, respondent has not provided us with a record from which we can determine what factors the trial court considered when it made the award. On the basis of the docket entry and the written order before us, we cannot find an abuse of discretion.

■■■ Finally, respondent argues he is entitled to a new trial because he was denied a change of venue on December 11, 1987, and was sanctioned for his request. We disagree.

The Code of Civil Procedure, section 2—1001(c), provides:

"A petition for change of venue shall not be granted unless it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, but if any ground for such change of venue occurs thereafter, a petition for change of venue may be presented based upon such ground." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1001(c).)

The docket entry for December 11, 1987, reads:

"The respondent moved for a change of venue. The motion was heard and denied.

The petitioner moved to the court to assess her attorney fees against the respondent. The petitioner presented her case in chief and rested. The court found that the motion for change of venue was not timely filed before any issue of substance was determined and that no other cause was raised which occurred after a similar motion was denied on October 9, 1987. The court found the motion to be vexatious and assessed $25 in petitioner's attorney fees against the respondent and ordered him to pay the fee on or before December 31, 1987."

Respondent asserts section 2—1001 gives him a right to renew his request for change of venue at any time he believes one is warranted.

Respondent maintains his request was merely a renewal of the motion for change of venue made and denied on October 9, 1987.

Respondent is apparently arguing his request should have been granted under section 2—1001(a)(2). (Ill. Rev. Stat. 1985, ch. 110, par. 2—1001(a)(2).) Allegedly, complaints directed toward the trial judge were filed by respondent with both the Judicial Inquiry Board and the Attorney Registration and Disciplinary Commission of the State of Illinois while the proceedings from which respondent appeals were still pending. However, the record does not reflect respondent argued at the trial level that the pending matters with the Inquiry Board and Disciplinary Commission warranted a new judge. Furthermore, the complaints respondent lists regarding the conduct of the trial judge and his rulings have been separately and summarily dismissed by this opinion. From the common law record before us we can find no abuse of discretion in the trial court's finding that respondent's renewed motion for a change of judge was unfounded and vexatious. Under such circumstances and upon motion by petitioner, it was proper for the trial court to tax respondent $25 for petitioner's attorney fees to defend the motion. Ill. Rev. Stat. 1985, ch. 110, par. 2—611.

We have, by separate order, denied petitioner's motions for sanctions and to strike respondent's appellate brief. The denial of those motions does not suggest any approval of the confusing activities of the respondent in the trial court and his inadequate brief. Litigation between these parties and ensuing appeals are a drain on the court process. We have been unduly burdened in our disposition of this case by the inadequacies of the record and respondent's brief as well as collateral matters. We do not wish to be so burdened in the future, and direct respondent, a licensed attorney and officer of the court, to pay heed to this admonition.

We affirm the judgment of the circuit court of Ford County.

Affirmed.

GREEN, P.J., and LUND, J., concur.