*In re* MARRIAGE OF COLLEEN BERTO, Petitioner-Appellant, and DOUGLAS BERTO, Respondent-Appellee.

Second District   No. 2—02—1022

Opinion filed November 17, 2003.

David B. Yavitz, of Lake, Toback & Yavitz, of Chicago, and Andrea B. Friedlander, of Deerfield, for appellant.

Roger A. White and Christopher A. White, both of White, Scott & White, of Lake Bluff, for appellee.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

Petitioner, Colleen Berto, appeals from the trial court's dismissal of her petition for attorney fees brought pursuant to sections 508(a) and (b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/508(a), (b) (West 2000)). Petitioner sought attorney fees following the discharge of a rule to show cause against respondent, Douglas Berto, which was premised on his failure to pay the required amount of unallocated maintenance and child support to petitioner. Following a hearing, the trial court determined that it lacked jurisdiction to hear petitioner's fee petition based on this court's ruling in *In re Marriage of Konchar*, 312 Ill. App. 3d 441 (2000). Petitioner also appeals from the trial court's order discharging the rule to show cause and from the trial court's refusal to award interest on the arrearage of unallocated maintenance and child support. We affirm in part, reverse in part, and remand.

In October 1999 the trial court dissolved the marriage of the parties. In its judgment for dissolution of marriage, the trial court incorporated the parties' marital settlement agreement by reference. Pursuant to the marital settlement agreement, respondent agreed to pay petitioner, for "Unallocated Reviewable Maintenance and Child Support," $23,500 per month, from September 10, 1999, through August 31, 2007. The agreement reflected that the amount of unallocated maintenance and child support would "be subject to review and possible modification based upon a substantial and material change in circumstances." The agreement also provided that "[t]he parties may only amend or modify this Agreement by a subsequent written agree-

ment dated and signed by them. No oral agreement shall be effective to, in any manner, modify or waive any terms or conditions of this Agreement."

On May 29, 2001, respondent filed a petition to reduce unallocated maintenance and child support. In his petition, respondent stated that, at the time of the dissolution, he "was making" approximately $1.3 million per year. Respondent averred that, as a result of the division of his employer on June 1, 2001, he would become a salaried employee with an anticipated income of $57,750 per month, subject to taxes and withholding. Respondent further averred that, because his income was "essentially halved," a substantial change in circumstances warranted the modification of the unallocated maintenance and child support. On June 28, 2001, petitioner moved to dismiss respondent's petition to reduce pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 2000)), challenging the foundational bases of respondent's averments.

On June 28, 2001, the trial court allowed the filing of petitioner's petition for rule to show cause for indirect civil contempt for nonpayment of unallocated maintenance and child support. In her petition, petitioner alleged that, without provocation or cause and without the permission of the trial court, respondent unilaterally reduced his monthly $23,500 obligation by $10,000. Petitioner also alleged that, as a result of respondent's conduct, she had incurred attorney fees in the preparation, presentation, and litigation of her petition for rule to show cause. Petitioner requested the trial court to enter an order requiring respondent (1) to show cause why he should not be held in contempt; (2) to pay the $10,000 arrearage; and (3) to pay petitioner's attorney fees and costs.

Following a hearing conducted on July 24, 2001, the trial court granted petitioner's motion to dismiss respondent's petition to reduce unallocated maintenance and child support. The trial court also granted petitioner's petition and issued a rule to show cause against respondent for indirect civil contempt for his failure to pay proper amounts of support, which at that time was $20,000 in arrears.

On August 7, 2001, respondent filed a second petition to reduce unallocated maintenance and child support. On September 4, 2001, respondent moved to "voluntarily nonsuit" "this action" pursuant to section 2—1009 of the Code (735 ILCS 5/2—1009 (West 2000)) "without prejudice and pursuant to this Motion *** tendering costs to the defendant."

On September 6, 2001, the trial court conducted hearings on respondent's petition to reduce unallocated maintenance, including respondent's motion for voluntary nonsuit, and on the return of the

rule to show cause for indirect civil contempt. The trial court found that respondent tendered the full amount of the arrearage, which by that time was $30,000, in open court. It determined that the provision of section 505 of the Act (750 ILCS 5/505 (West 2000)) regarding interest did not apply to unallocated maintenance and child support and, therefore, no interest was due petitioner. Following arguments of the parties, the trial court declined to hold respondent in indirect civil contempt of court for his admitted failure to pay petitioner the proper amount owing for unallocated maintenance and child support. Petitioner's counsel requested a continuance on the hearing for the rule to show cause so the court could hear argument on petitioner's fee petition at the same time; the trial court denied the request. The trial court ordered the rule discharged and granted petitioner 28 days to file a petition for an award of attorney fees.

On September 7, 2001, the trial court issued a written order finding, *inter alia*, respondent's motion for voluntary nonsuit applied only to respondent's petition to reduce unallocated maintenance and child support, and the nonprosecution of respondent's petition to reduce worked no injustice or prejudice to petitioner. The trial court ordered that respondent's petition to reduce could be nonsuited or withdrawn without prejudice.

On October 2, 2001, petitioner filed her petition for award of attorney fees, sanctions, and other relief pursuant to sections 508(a) and (b) of the Act (750 ILCS 5/508(a), (b) (West 2000)) and pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137). Petitioner sought $52,346 in previously incurred attorney fees, plus attorney fees and costs incurred responding to respondent's two petitions to reduce his maintenance and child support obligation and prosecuting petitioner's petition for rule to show cause. Petitioner also sought $110,500 in sanctions and fines pursuant to Rule 137 against respondent and his counsel for allegedly making false statements in their pleadings and in open court, and for intentionally misrepresenting that respondent's income would be "halved," when it had actually increased.

On December 4, 2001, respondent filed his response to petitioner's petition for attorney fees and sanctions. Respondent admitted that, for the months of June, July, and August 2001, he unilaterally reduced his support obligation by $10,000 and made only partial payments of $13,500. Thereafter, on June 17, 2002, respondent filed a motion for leave to withdraw his December 2001 response. Respondent sought to file instead a motion to strike and dismiss petitioner's fee petition for lack of jurisdiction pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2000)). Respondent argued that the fee petition was barred pursuant to section 503(j) of the Act (750 ILCS 5/503(j) (West 2000)), as interpreted by this court in *Konchar*, 312 Ill. App. 3d 441.

On June 17, 2002, the trial court conducted a hearing on respondent's motion to dismiss petitioner's fee petition. Following arguments of the parties, the trial court entered an order dismissing all allegations and requests for fees pursuant to section 508 of the Act in that "the court lacks jurisdiction to hear the fees." The trial court denied petitioner's request for a Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) finding. On July 9, 2002, petitioner filed her motion to reconsider the trial court's rulings on respondent's dismissal motion and the Rule 304(a) finding. On September 3, 2002, following arguments of the parties, the trial court denied petitioner's motion to reconsider as it related to the fee petition, but it made a finding pursuant to Supreme Court Rule 304(a). Petitioner timely appeals.

■ Before reaching the merits of petitioner's appeal, we must dispense with respondent's objection to jurisdiction. When an action involves multiple claims for relief, an order that finally resolves only one claim is not immediately appealable unless the trial court has found in writing that there is no just reason to delay either enforcement or appeal or both. 155 Ill. 2d R. 304(a); *In re Marriage of Alyassir*, 335 Ill. App. 3d 998, 999 (2003), citing *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 464 (1990). Here, neither party disputes that the trial court made a Rule 304(a) finding. Respondent argues, however, that the trial court abused its discretion when it made the Rule 304(a) finding because petitioner's claim for fees pursuant to section 508 of the Act is so entwined with the remaining claim for sanctions pursuant to Rule 137 that a "piecemeal" appeal of the dismissed claim is improper. We disagree.

On August 22, 2002, respondent filed his response to petitioner's motion to reconsider. As to the Rule 304(a) issue, respondent stated only "[w]hether [the trial court's] order is final for purposes of appeal is irrelevant to the inquiry under Section 503(j)." At the September 3 hearing, respondent posed no objection to the trial court's inclusion of Rule 304(a) language in its order denying petitioner's motion to reconsider. The trial court included the Rule 304(a) language, reasoning, "I could give that language because it has absolutely nothing to do with any other issues. It is a stand-alone issue. And there doesn't seem to be any reason to let it hang there, any other issues; and it is post-decree anyway. So I suppose you are entitled to that language." The trial court has discretion to determine whether a piecemeal appeal under Rule 304(a) best serves judicial economy and the parties' interests. *Alyassir*, 335 Ill. App. 3d at 1001. On our review of the record, we agree with the trial court's reasoning and find no abuse of its discretion.

■ Respondent also argues that various statements in petitioner's

statement of facts violate Supreme Court Rule 341(e)(6) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(6), eff. October 1, 2001) and requests that we strike those statements in petitioner's brief. We believe the record speaks for itself, and this court will turn to the record to resolve any factual inconsistencies that the parties have represented in the briefs on appeal. Therefore, we deny the request to strike, but, to the extent that petitioner's statement of facts contains inaccurate, unfair, and argumentative statements, we will disregard those objected-to statements.

Turning to the merits, petitioner presents three issues for our consideration: (1) whether the trial court properly discharged the rule to show cause; (2) whether the trial court erred when it dismissed petitioner's section 508 fee petition for lack of jurisdiction; and (3) whether the trial court erred when it refused to award interest on the arrearage of respondent's unallocated maintenance and child support.

Petitioner contends that the trial court should not have discharged the rule to show cause and should have held respondent in contempt for his failure to pay the full amount of unallocated maintenance and child support for the months of June, July, and August 2001. The trial court found that, at the hearing on the rule to show cause, respondent presented a check for $30,000, representing the three-month arrearage. The trial court determined that, once respondent was in compliance, it no longer had the authority to find him in contempt. Petitioner relies on *In re Marriage of Betts*, 172 Ill. App. 3d 742 (1988) (*Betts III*), in support of her argument that the trial court had discretion, even after respondent's compliance, to find respondent in contempt. Respondent counters that he ceased to be in violation of the trial court's order once he paid the arrearage and, therefore, continuing with a civil contempt proceeding would have been essentially pointless. Alternatively, respondent argues that the trial court did not abuse its discretion when it discharged the rule to show cause because he was no longer in violation of the rule.

■ Generally, provisions regarding maintenance and child support contained in a marital settlement agreement and incorporated into a judgment of dissolution are enforced through contempt proceedings. See 750 ILCS 5/502(e) (West 2002); *In re Marriage of Ramos*, 126 Ill. App. 3d 391, 396 (1984). The contempt petition is known as a ''petition for rule to show cause.'' See *Gentile v. Gentile*, 87 Ill. App. 3d 311, 313-14 (1980). A trial court's grant of the petition results in its issuance of a ''rule to show cause.'' See *Gentile*, 87 Ill. App. 3d at 313. A rule to show cause is one means by which to bring an alleged contemnor before the trial court when the failure to comply with a court order is the alleged contemptuous behavior. *In re Marriage of*

*Rizza,* 237 Ill. App. 3d 83, 87 (1992), citing *In re Marriage of Betts,* 200 Ill. App. 3d 26, 52-53 (1990) *(Betts V)*; see also *Ex Parte Petrie,* 38 Ill. 498, 501-02 (1865). A reviewing court will not overturn a trial court's decision to discharge a rule to show cause absent a clear abuse of the trial court's discretion. *Igney v. Igney,* 303 Ill. App. 563, 570 (1940).

■ In the present case, the October 1999 marital settlement agreement provided that, beginning in September 1999, respondent would pay petitioner $23,500 per month for unallocated maintenance and child support. In June 2001 respondent unilaterally reduced his support payment to petitioner by $10,000. Shortly thereafter, petitioner brought forth a "Petition for Rule to Show Cause for Indirect Civil Contempt for Nonpayment of Unallocated Maintenance and Child Support." In July 2001 the trial court issued a rule to show cause for indirect civil contempt and ordered respondent to appear and "show cause why he *** should not be held in Contempt of this Court and sentenced to jail until *** he complies with this Court's order." At the time the trial court issued the rule to show cause, respondent had unilaterally reduced his July 2001 payment to petitioner by $10,000, and therefore was $20,000 in arrears. Respondent also admittedly reduced his August 2001 payment to petitioner by $10,000, for a total arrearage of $30,000. At the September 6, 2001, hearing on the rule to show cause, respondent tendered his check for $30,000 in open court. The trial court determined that respondent was in compliance and discharged the rule to show cause.

We find no clear abuse of the trial court's discretion in discharging the rule to show cause. Petitioner requested the trial court to issue a rule to show cause for indirect civil contempt. The purpose of civil contempt is to coerce compliance with the order of a court. *Rizza,* 237 Ill. App. 3d at 87, citing *In re Marriage of Logston,* 103 Ill. 2d 266, 289 (1984); *Betts V,* 200 Ill. App. 3d at 44. Accordingly, the proceedings on petitioner's petition for rule to show cause for indirect civil contempt were initiated for the purpose of compelling respondent to pay the arrearage. At the hearing, respondent appeared and paid the entire $30,000 arrearage. In proceedings concerning civil contempt, the trial court seeks only to secure obedience to its prior order. *Logston,* 103 Ill. 2d at 289. Upon the trial court's receipt of the tendered arrearage, respondent was in compliance.

We further find that the trial court neither abused its discretion nor reached a decision contrary to the manifest weight of the evidence when it declined to find respondent in indirect civil contempt of court. See *Logston,* 103 Ill. 2d at 287. A finding of civil contempt is not proper unless the means to purge the alleged contempt is within the

power of the contemnor, and, therefore, a finding of civil contempt cannot survive the dismissal of the underlying action that was its basis. *Rizza*, 237 Ill. App. 3d at 87, citing *Logston*, 103 Ill. 2d at 289. In this case, once respondent tendered the $30,000 payment, there was no longer an arrearage of unallocated maintenance and child support. Therefore, there was no means left by which respondent could "purge" himself of the alleged contempt, and accordingly, no basis to find respondent in contempt. See *Rizza*, 237 Ill. App. 3d at 87.

Petitioner's reliance on *Betts III*, 172 Ill. App. 3d 742, is not without merit. In *Betts III*, the respondent paid his child support obligation in full one day prior to the hearing on the petition for rule to show cause. The trial court found the respondent in contempt even though it acknowledged no support was due. The reviewing court affirmed, finding "it was contemptuous of respondent to wait to pay the past-due support on the eve of the date set for hearing." *Betts III*, 172 Ill. App. 3d at 746. The deficiency we note in *Betts III* is that, although the respondent was found in "contempt," neither the trial court nor the reviewing court made a specific finding as to whether the respondent was in civil or criminal contempt or direct or indirect contempt. Because we believe *Betts III* offers an incomplete analysis of the question, we decline to follow it.

We believe that a more reasoned decision can be made using the rationale of *Betts V*. In *Betts V*, the reviewing court stated:

"The primary determinant of whether contempt proceedings are civil or criminal in nature is the purpose for which contempt sanctions are imposed. If contempt sanctions are imposed for coercive purposes—to compel the contemnor to perform a particular act— the contempt is civil in nature. On the other hand, criminal contempt sanctions are imposed for the purpose of punishing past misconduct." *Betts V*, 200 Ill. App. 3d at 43.

In the present case, the basis of the trial court's rule to show cause was respondent's failure to pay petitioner the full amount of support owed. Holding respondent in indirect civil contempt of court after he presented his $30,000 arrearage would not have had the effect of *coercing* respondent to make the full support payments due for the previous three months but, rather, would have *punished* him for failing to make the support payments at the time petitioner was entitled to receive them. Respondent's unilateral reduction of amounts of support that petitioner was entitled to were past acts that he could not undo. Because coercion is the goal of indirect civil contempt of court and punishment is the goal of criminal contempt of court, respondent could not have properly been held in indirect civil contempt of court as a method of punishing him for his past misconduct. See *First*

*Midwest Bank/Danville v. Hoagland,* 244 Ill. App. 3d 596, 611-12 (1993) (reversing the trial court's finding of indirect civil contempt because of the defendant's compliance).

The record reflects petitioner's acknowledgment of the foregoing distinctions between proceedings for indirect civil and criminal contempt. During the September 6 hearing, when the trial court explained that, "so long as the rule is for indirect civil contempt, as soon as he comes into compliance with the order I am dead in the water," counsel for petitioner surmised, "I suppose we are foreclosed from filing a motion for criminal contempt." The record is clear that petitioner did not pursue a petition for a rule to show cause why respondent should not be found in criminal contempt for disregarding his obligation to provide timely support payments to petitioner. Moreover, petitioner did not seek leave to amend her petition for rule to show cause to add a count of criminal contempt. Whether respondent could have been or should have been found in criminal contempt, though, are issues not properly before us at this time. We, therefore, decline to consider the matter. See *In re Marriage of Lehr,* 317 Ill. App. 3d 853, 859 (2000) (reviewing courts lack authority to render advisory opinions).

Petitioner next contends that the trial court erred when it dismissed petitioner's section 508 petition for attorney fees for lack of jurisdiction. Both petitioner and respondent expend considerable amounts of effort in their briefs discussing the ramifications of *Konchar,* 312 Ill. App. 3d 441, and whether the trial court had jurisdiction to consider petitioner's fee petition. We find, however, that *Konchar* is inapplicable to our analysis of this issue.

In *Konchar,* a case concerning a postjudgment motion regarding visitation, the trial court entered an order establishing a new visitation schedule for the parties. The order was silent with respect to the issue of attorney fees. Approximately one month after the trial court issued its order, the petitioner filed a petition for attorney fees, which the trial court denied as untimely filed. This court held that a petition for contribution to attorney fees that was filed within 30 days of the closing of proofs but after judgment was entered was untimely. *Konchar,* 312 Ill. App. 3d at 443-44. We reviewed sections 508 and 503(j) of the Act and held that a petition for attorney fees must be heard and decided before the final judgment is entered. *Konchar,* 312 Ill. App. 3d at 443-44.

In the present case, petitioner included an allegation concerning the services of her counsel and the expense involved in attempting to enforce the terms of the marital settlement agreement. Throughout the course of this enforcement proceeding, petitioner repeatedly at-

tempted to obtain a hearing on attorney fees. At one point during the September 6, 2001, hearing, counsel for petitioner even requested that the petition for rule to show cause "be continued to the future date when we are going to have the hearing on the fee petition so the Court can hear all of this at the same time." The trial court denied the request, stating that it had already issued the rule requested in the petition. However, despite all of this, when the trial court discharged the rule, it expressly granted petitioner "28 days to file a Petition for award of attorneys fees in connection herewith."

■ Respondent claimed at oral argument that the trial court "violated the statute" when it allowed petitioner 28 days to file her fee petition. Respondent essentially argues that the trial court lacked authority to reserve the issue of attorney fees because section 503(j) expressly states that the fee petition "shall be heard and decided" "before judgment is entered." 750 ILCS 5/503(j) (West 2000). We decline to adopt such a strict interpretation of an isolated portion of a statute taken out of context. The primary rule of statutory construction requires that this court ascertain and give effect to the legislative intent and, in doing so, we "must consider all of the parts of the statute together and give every word or phrase some reasonable meaning." *Konchar*, 312 Ill. App. 3d at 443. Section 508 of the Act is the relevant statute pertaining to petitions for attorney fees. It states, in relevant part:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. *** At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503." 750 ILCS 5/508(a) (West 2000).

Section 503(j) of the Act provides in relevant part:

> "After proofs have closed in the final hearing on all other issues between the parties *** and before judgment is entered, a party's petition for contribution to fees and costs incurred in the proceeding shall be heard and decided, in accordance with the following provisions:
>
> > (1) A petition for contribution, if not filed before the final hearing on other issues between the parties, shall be filed no later than 30 days after the closing of proofs in the final hearing *or within such other period as the court orders*." (Emphasis added.) 750 ILCS 5/503(j) (West 2000).

Therefore, contrary to respondent's claim, section 508, in conjunction with section 503(j)(1), clearly authorized the trial court to allow petitioner an additional 28 days in which to file her petition for at-

torney fees. By granting petitioner an additional 28 days to file her petition, the trial court, therefore, had not yet entered a "final judgment" in the matter. Further, courts have consistently acknowledged a trial court's authority to reserve the issue of attorney fees following decisions in dissolution of marriage cases. See, *e.g.*, *In re Marriage of Ruchala*, 208 Ill. App. 3d 971 (1991).

██ ██ A judgment is final if it finally disposes of the rights of the parties, either on the entire controversy or a separate branch thereof, and an order is nonetheless final for purposes of review where matters left for future determination are merely incidental to the ultimate rights that have been adjudicated by the judgment. See 155 Ill. 2d R. 304; *Franson v. Micelli*, 172 Ill. 2d 352, 356 (1996). However, if a trial court reserves issues for future consideration within a support order, such as retroactive child support or reimbursement, then the order is not final. *Franson*, 172 Ill. 2d at 356. Here, the trial court's express reservation of the issue of attorney fees distinguishes the present case from the circumstances presented in *Konchar*. Accordingly, the trial court erred when it determined that it lacked jurisdiction to hear petitioner's fee petition, especially since it had expressly reserved the issue for later consideration.

██ There are two separate provisions under section 508 of the Act that apply to enforcement. Under section 508(a) of the Act, the award of attorney fees is discretionary with the trial court and is made after considering the relative financial resources of the parties. 750 ILCS 5/508(a) (West 2002). Section 508(b) of the Act, however, is a mandatory provision by which the trial court must, in an enforcement proceeding such as this one, order the delinquent respondent to pay the petitioner's costs and reasonable attorney fees. See *In re Parentage of M.C.B.*, 324 Ill. App. 3d 1, 4 (2001), citing *In re Marriage of Walters*, 238 Ill. App. 3d 1086, 1098 (1992). In so doing, the trial court exercises its discretion in deciding whether the delinquent respondent's failure to abide by the terms of the marital settlement agreement and timely pay the proper amount of support to the petitioner is without cause or justification. 750 ILCS 5/508(b) (West 2002); *M.C.B.*, 324 Ill. App. 3d at 4, citing *In re Marriage of Wassom*, 165 Ill. App. 3d 1076, 1081 (1988). Section 508(b) provides in relevant part:

> "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party." 750 ILCS 5/508(b) (West 2002).

The policy behind section 508(b) is to eliminate the financial burden

on a custodial parent that is the consequence of an enforcement action. *M.C.B.*, 324 Ill. App. 3d at 4, citing *Wassom*, 165 Ill. App. 3d at 1081. This is because in some instances it is possible that the amount of attorney fees and costs will exceed the amount of arrearage. *M.C.B.*, 324 Ill. App. 3d at 4, citing *Fogliano v. Fogliano*, 113 Ill. App. 3d 1018, 1023 (1983). In such a case, there would be no advantage in enforcement and the delinquent party could escape his obligations under the prior court order. *M.C.B.*, 324 Ill. App. 3d at 4, citing *Fogliano*, 113 Ill. App. 3d at 1023.

In the present case, the question of indirect civil contempt was resolved when respondent presented to the trial court payment of the $30,000 arrearage. However, petitioner apparently believed that the trial court needed to make a finding of contempt as a prerequisite to an award of attorney fees under section 508(b) of the Act (750 ILCS 5/508(b) (West 2002)). This is not the case. See *In re Marriage of Baggett*, 281 Ill. App. 3d 34 (1996); *In re Marriage of Dieter*, 271 Ill. App. 3d 181 (1995); *In re Marriage of Roach*, 245 Ill. App. 3d 742 (1993). A finding of contempt is sufficient to require an award of fees under section 508(b), but such a finding is not necessary. *In re Marriage of Davis*, 292 Ill. App. 3d 802, 811 (1997). The party that fails to comply with an order bears the burden of proving that compelling cause or justification for the noncompliance exists. *In re Marriage of McGuire*, 305 Ill. App. 3d 474, 481 (1999).

In *Roach*, the petitioner brought proceedings seeking, *inter alia*, to hold the respondent in contempt for his failure to make maintenance payments and requesting attorney fees. The respondent was in arrears for maintenance from May 1989 through November 1990. In November 1990 the petitioner filed a petition for rule to show cause, and the trial court issued the rule. In March 1991 the respondent made eight payments. By the time of the hearing on the petition for rule to show cause the respondent had made all the required payments. The trial court declined to find the respondent in contempt and ruled against the petitioner on her request for attorney fees. *Roach*, 245 Ill. App. 3d at 744-48. The reviewing court affirmed, except on the issue of attorney fees. *Roach*, 245 Ill. App. 3d at 748. The reviewing court noted that, although the trial court declined to find the respondent in contempt, it nevertheless made a finding that the respondent's failure to make timely maintenance payments was without cause or justification. *Roach*, 245 Ill. App. 3d at 748. Based on the trial court's finding, the reviewing court ruled that section 508(b) of the Act mandated an award of attorney fees. *Roach*, 245 Ill. App. 3d at 748. The reviewing court explained:

"That the maintenance payments were eventually made does not

> change the fact it was necessary for [the petitioner] to employ an attorney and to file a petition to receive the amounts owed her." *Roach*, 245 Ill. App. 3d at 748.

The reviewing court reversed the trial court's judgment and remanded the case so the trial court could determine the amount of attorney fees. *Roach*, 245 Ill. App. 3d at 748.

In *Baggett*, the respondent was ordered to pay 25% of his income in child support to the petitioner. Two years later, the petitioner filed, *inter alia*, a petition for rule to show cause for indirect civil contempt and attorney fees based on the respondent's failure to pay child support. The trial court found that the respondent was not in contempt and declined to award attorney fees. *Baggett*, 281 Ill. App. 3d at 39-40. The reviewing court affirmed the trial court's refusal to find the respondent in contempt of court. *Baggett*, 281 Ill. App. 3d at 40. However, with respect to the petitioner's request for section 508(b) attorney fees, the reviewing court examined the record and determined that "the record [was] devoid of any evidence of [the respondent's] cause or justification for not complying with the order." *Baggett*, 281 Ill. App. 3d at 40. The reviewing court reversed the trial court's judgment and remanded the case, holding that the trial court erred in not granting attorney fees to the petitioner. *Baggett*, 281 Ill. App. 3d at 40.

In the present case, the record reflects that, at the time of the judgment of dissolution in October 1999 and for the year 2000, respondent "was making" approximately $1.3 million annually. The record does not reflect whether the $1.3 million figure was only his wages from employment earnings, or whether it included income from other sources. Nevertheless, we believe it is fair to say that respondent's income or wealth is considerable to the extent that he entered into a marital settlement agreement and agreed to pay $23,500 per month to petitioner for unallocated maintenance and child support. However, the record also reflects that, in June, July, and August 2001, respondent admittedly reduced his obligation by $10,000 per month. Although respondent filed two petitions to reduce his $23,500 monthly obligation, the first petition was dismissed on petitioner's motion and the second petition was never pursued or presented to the trial court for its determination as to whether respondent indeed incurred a "substantial and material change in circumstances." The record clearly reflects that, despite being both able and aware of his obligation to pay unallocated maintenance and child support to petitioner in the amount of $23,500, respondent admittedly did not fulfill his obligation and paid only $13,500 to petitioner for the months of June, July, and August 2001. As a result of respondent's unjustified refusal to pay his unallocated maintenance and child support obligation, petitioner incurred the expense of legal action.

■ An award of attorney fees is mandatory upon a court's finding of a failure to pay without cause or justification. 750 ILCS 5/508(b) (West 2002). In the present case, the trial court refused to make such a finding, apparently believing that it was "dead in the water" once respondent tendered his check. Pursuant to *Baggett*, the trial court's failure to make an express finding does not preclude this court from reviewing the record and determining whether the trial court erred. See *Baggett*, 281 Ill. App. 3d at 40. We find nothing in the record from which the trial court could have reasonably concluded that respondent's failure to make timely and complete payments to petitioner in June, July, and August 2001 was due to some compelling cause or justification. That respondent presented a check for $30,000 on the date the trial court had ordered him to appear does not absolve him of the consequences that transpired following his unilateral decision to withhold $10,000 from petitioner for three months. See *Baggett*, 281 Ill. App. 3d 34; *Dieter*, 271 Ill. App. 3d 181; *Roach*, 245 Ill. App. 3d 742. Respondent placed petitioner in the inexorable position of having to engage the services of counsel and litigating this matter so that she could receive what was rightfully owed her. In accordance with section 508(b) of the Act, petitioner should be reimbursed for reasonable costs and attorney fees in connection with her petition for rule to show cause. Accordingly, we reverse the trial court's dismissal of petitioner's section 508 fee petition and remand so that the trial court may determine the amount of those fees and costs.

■ Last, petitioner contends that the trial court abused its discretion when it refused to award interest on the $30,000 arrearage. The decision to award interest on any dissolution judgment, other than a judgment for child support, is a discretionary matter for the trial court. *In re Marriage of Carrier*, 332 Ill. App. 3d 654, 660 (2002). Section 505(b) of the Act provides that a support obligation that becomes due and remains unpaid for 30 days or more shall accrue simple interest at the rate of 9% per annum. 750 ILCS 5/505(b) (West 2002). In the present case, the $30,000 arrearage was for "unallocated maintenance and child support," meaning that there was no specific amount designated for either maintenance or child support. The trial court explained its inability to calculate an interest amount because of the type of award involved. The trial court concluded that section 505(b) of the Act did not apply to an award of unallocated maintenance and child support and declined to award interest on that basis. Petitioner's argument that the trial court abused its discretion because it failed to recognize that it had discretion, with no supporting authority other than our standard of review, is simply insufficient to persuade this court that an abuse of discretion occurred. See *County of McHenry*

*v. Thoma*, 317 Ill. App. 3d 892, 892 (2000) (reviewing court is not a repository into which an appellant can dump the burden of research). The issue was presented to the trial court, the trial court considered the issue, and the trial court ruled on the matter. We conclude that the trial court did not abuse its discretion when it declined to award interest on the unallocated maintenance and child support arrearage.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed in part, reversed in part, and remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

GROMETER and KAPALA, JJ., concur.